**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Bankruptcy No. 88–00043.**

United States Bankruptcy Court, D. New Hampshire.

June 7, 1988.

Richard Levin, Don Willenburg, Stutman, Treister & Glatt, Los Angeles, Cal., Thomas R. Jones, Cahill Gordon & Reindel, New York City, Martin L. Gross, Sulloway, Hollis & Soden, Concord, N.H., for debtor PSNH.

ORDER ON DEBTOR'S MOTION TO EMPLOY FIRST BOSTON CORPORATION FOR MERGER AND ACQUISITION SERVICES

JAMES E. YACOS, Bankruptcy Judge.

On May 13, 1988, the debtor filed its Motion For Order Approving Employment Of The First Boston Corporation For Merger And Acquisition Services pursuant to §§ 327 and 328 of the Bankruptcy Code. The debtor, Public Service Company of New Hampshire (PSNH), previously requested authority to employ First Boston as PSNH's financial advisor, which employment was approved by this court by order dated March 21, 1988.

Under the present motion, the debtor requests the court to approve employment of First Boston as the debtor's "exclusive financial advisor and sole agent with respect to the potential sale of Public Service or all or a portion of its assets," in accordance with an engagement letter between the debtor and First Boston. The engagement letter generally provides for an up-front nonrefundable "advisory fee" of $500,-000.00; for "transaction fees" upon the sale of PSNH or its assets at a sliding scale of percentages of the total sale ranging from 0.50 to 0.75 percent; and for the reservation of First Boston's fee rights against any sale within a twelve-month period if its employment is terminated by PSNH other than for cause.

Following requisite notice, the court held a hearing on the above-referenced motion on June 3, 1988. Responses to the motion were heard from the Official Committee of Unsecured Creditors, the Equity Security Holders' Committee, and the United States Trustee. The court also received the testimony of several witnesses, including two principals of First Boston Corporation, detailing the nature of the proposed services and their reasons in support of the motion.

At the conclusion of the hearing, the court dictated its findings and conclusions into the record, as evidenced by the attached extract, incorporated herein by reference. [See Annex to this Order] Accordingly, it is hereby ORDERED, ADJUDGED and DECREED as follows:

The debtor's Motion To Employ First Boston Corporation for Merger and Acquisition Services is denied without prejudice.

## ANNEX

*Extract of Judge Yacos' Findings and Conclusions Regarding Debtor's Motion for Order Approving Employment Of The First Boston Corporation For Merger and Acquisition Services*

(June 3, 1988)

I will enter a formal order, but I believe first of all this matter has been very well briefed, argued, and prepared today and I commend all parties involved. I've complained before that I have too rich a diet of interesting questions and I guess this is one more of them.

However, on this one I'm pretty clear as to what should be done, at least in my judgement at this stage and that is ...:

This motion is denied without prejudice *to a new motion to be filed after there's* been a general discussion between the debtor-in-possession and its investment banker and the committees and their investment bankers and any other qualified negotiating parties as to the various options available to this company. I say general discussion—I don't mean that to be the last discussion. But I think, for various reasons which I'll set out reacting to your

arguments, that that's the appropriate way to go.

In the first place, I don't think the debtor's shown good cause now, at this stage in this case, to grant this type of motion. I think it is premature. I agree with the committees and the U.S. Trustee on that. I think that approval of this kind of agreement should be requested after the financial advisor has given its financial advice to the debtor as to the various alternatives. That's why it was retained and I think it should perform that function and I think it will perform that function notwithstanding this order.

I also feel that it's important to eliminate any conflict or any appearance of conflict with regard to the neutrality of the financial advisor's advice. I realize the First Boston Corp. is made up of professional people who have in their own minds professional standards and do not feel that they would be leaning one way or another because of fee arrangements. But we're all human and, if only unconsciously, if there's a great discrepancy in fees depending on your advice it seems to me that it would be better to put that particular cart behind the horse rather than before it.

I think we have, when the advice has been given as to possible options—the general advice—and there's an open period there in which the debtor can make its determination along with consulting with the other negotiating parties as to which direction they think they ought to go, at some stage after that first general discussion it may well be appropriate to appoint this investment banker or some other investment banker to pursue a sale option or at least a further development of sale options. At that point there can be no question about the neutral professional financial advice given in the first context.

That may not be the way it works out in the merger and acquisition world generally but in a court proceeding it seems to me the court has to be concerned to some extent with appearances. Particularly in a case like this that has a large public interest and impact that may mean that the successful and prompt reorganization is go-

ing to depend on acceptance by the public or their representatives as to the fairness and the neutrality of the procedures used.

As to not being able to flesh out the general ideas about sales without this further engagement, it seems to me that the NEES interest and the Northeast Utilities' interest does give some concrete context already as to helping in generally evaluating sales options. Surely there may be others when the process gets rolling and they may well be better, or these two possible offers may well be improved, but that improvement possibility can be taken into account in my judgement by a competent investment banker in giving advice to a client.

I also agree with the committee that—I think the equity committee pointed it out, maybe the other committee as well in their brief—the fact that the fee structure should ... locking in on a fee structure for an investment banker in these situations should await some better indication of a range of values to know whether the particular sliding scale and the breakpoints and so forth used are appropriate.

Also, I believe that what is attempted to be done here today can't be done and that is draw a line that can be precisely drawn in functional terms between financial advice and evaluating options—when the options include a possible sale—and the preparatory planning for merger and acquisition activities. Those things just seem to me essentially have to overlap and I think that's proven by the fact that both witnesses really couldn't say what would not get done if this particular agreement is not approved. They could not come up with any specifics as to what additional work they would do if this agreement is approved at this stage. And I think it just does overlap in functional terms and maybe that wasn't appropriately taken into account in the original retention, but that is a fact as I see it.

And I also have some concern that giving explicit direction at this stage to an investment banker to go into a case-specific planning prep stage for a merger and acquisition situation almost inevitably will divert energies to the sale mode for handling this proceeding. That may or may not be true actually, but it certainly seems to me that this is not the appropriate stage to give explicit instruction to go into case-specific sales analysis to the extent that the investment bankers indicate they would do in the normal sale context. We are still at the stage of getting financial advice as to possible options.

Finally, acting after an analysis of the options is made to the negotiating parties, and acting only then to authorize an investment banker to look further into the sale mode, it seems to me will permit a structuring of the best possible deal as far as getting the appropriate investment banker, if an investment banker is needed in the context in which it then comes up. Courts want to maximize values just as well as investment bankers do, and one thing I reserve the right to do in the appropriate procedural context is to see whether there are other investment bankers who might do the job at lesser fees, have equal qualifications, and have no appreciable start-up delay factor, or if they do it's overcome by their adjusted fee. I think I would prefer to have the locking of this case into a particular investment banker, with a fixed, percentage, transactional fee, await the stage when the options available have already been presented to the appropriate parties. It will probably be necessary to have an investment banker to provide the selling and packaging services that are their special talents in these transactions, but I don't know that that's necessarily true in this particular case. And I just think that it's premature to lock the case into that mode at this point.

Now, finally, from an equitable standpoint it does seem to me that the original retention agreement may have been ambiguous to some extent, in trying to draw a line that I've said can't be drawn, basically, and may justify some additional monthly compensation upon an appropriate motion. During the interim period, until I either approve retention of First Boston Corporation on a transactional fee basis or deny such a motion, I would consider an appro-

priate motion on the regular calendar, if that's found to be appropriate by the parties. But I don't think that *that* consideration should govern my decision on the motion before me, and for all the reasons I just indicated I think this motion should be denied without prejudice.