**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Bankruptcy No. 88–00043.**

United States Bankruptcy Court, D. New Hampshire.

July 20, 1988.

Richard Levin, R. Carl Anderson, Concord, N.H., for Public Service Co.

Joel Zweibel, Geoffrey Kalmus, New York City, J. Michael Deasy, Nashua, N.H., for the Unsecured Creditors' Committee.

John Pritchard, Anthony Marts, Manchester, N.H., for First Fidelity Bank.

George Wade, David J. Dunfey, Boston, Mass., for Citicorp and CUC, Inc.

John J. Jerome, New York City, for Shearson & Lehman Bros.

Larry M. Smukler, Concord, N.H., Daniel J. Callaghan, Frederick J. Coolbroth, Manchester, N.H., for the State of N.H.

Howard J. Berman, New York City, for the Equity Committee.

Daniel M. Glosband, Boston, Mass., for United Illuminating, New England Power, EUA Incorporation, Canal Elec. Co., and Montaup Co.

Connie L. Rakowsky, Concord, N.H., for New England Elec. Service.

Sandor E. Schick, New York City, for Eurodollar Term Loan Syndicate.

ORDER DENYING THE THIRD MORT-
GAGEES' MOTION FOR ADEQUATE
PROTECTION IN THE FORM OF
CURRENT AND CONTINUING IN-
TEREST PAYMENTS UNDER THE
THIRD MORTGAGE BONDS

JAMES E. YACOS, Bankruptcy Judge.

Upon consideration of the Motion dated May 3, 1988 by First Fidelity, N.A., New Jersey ("First Fidelity"), as trustee under the Third Mortgage Bond Indenture, dated February 15, 1986 as amended and supplemented (the "Third Mortgage Indenture"), Citicorp, Consolidated Utilities & Communications, Inc. ("CUC"), and Amoskeag Bank, as trustee under the Pollution Control Revenue Bond Indenture, 1986 Series A (collectively, the "Third Mortgagees" or the "Movants") for an order requiring the above-captioned debtor (the "Debtor" or "PSNH") to afford adequate protection through the payment of interest on the Third Mortgage Bonds (as hereinafter defined) as and when such payments are due, including any payments which have become due and have not been paid subsequent to

the filing of the Chapter 11 case (the "Third Mortgagee Motion" or the "Motion") and the responses and memoranda in opposition by the Debtor, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Official Committee of Equity Security Holders (the "Equity Committee"), and upon the submissions of other parties in interest, and upon that certain stipulation among the Third Mortgagees, the Debtor and the Creditors' Committee, approved by order of this Court on May 27, 1988 (the "Procedural Stipulation"), and after a hearing on June 9, 1988 (the "Hearing") upon due notice, the Court makes the following Findings of Fact and Conclusions of Law.

The following facts either appear from the record of the Hearing or were alleged by the Movants in support of their Motion and, pursuant to the Procedural Stipulation, were presumed true, solely for the purposes of the Motion and the Hearing. The findings of fact herein, to the extent asserted by the Movants and adopted by the Court, are thus adopted solely for the purpose of ruling on the Motion, and not for any other purpose in this case.

*Findings of Fact*

1. On January 28, 1988 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). PSNH continues in possession and control of its property as debtor-in-possession pursuant to Section 1108 of the Bankruptcy Code.

2. Prior to the filing of its Chapter 11 petition, PSNH incurred certain secured indebtedness evidenced by First Mortgage Bonds, General and Refunding Mortgage Bonds, a Eurodollar Term Loan, a Domestic Term Loan, a PruLease Financing (collectively, the "Senior Secured Borrowing"), and the bonds issued under the Third Mortgage Indenture and Pollution Control Revenue Bonds (collectively referred to as the "Third Mortgage Bonds"). The Third Mortgage Bonds have equal priority *inter se*. The aggregate unpaid principal face amount of the Senior Secured Borrowing

and the Third Mortgage Bonds (collectively referred to as the "Secured Borrowings") as of the Petition Date was not more than $766 million.

3. The Third Mortgage Bonds were issued in the aggregate face amount of $325 million, subject to original issue and underwriting discounts of $46 million.*

4. Movants allege that the Secured Borrowings are collateralized by liens and security interests covering substantially all tangible, real and personal property of PSNH, including "real estate, plants, transmission facilities, machinery and equipment, subject only to certain excepted property and permitted encumbrances as described in the respective indentures and loan and lease agreements" (collectively, the "Bond Collateral"). (Motion at para. 4).

5. The Third Mortgage Bonds were issued in February, 1986 in connection with the funding of construction and development of the Seabrook Nuclear Power Facility, in which PSNH holds a 35.6% joint owner's interest (the "Seabrook assets"). [See Third Mortgage Bond Prospectus dated February 20, 1986 (the "Prospectus") at p. 4] The Seabrook assets as well as the property in New Hampshire used by PSNH to generate and distribute electricity (the "non-Seabrook assets") comprise the Bond Collateral. [See Prospectus at p. 48.]

6. As of the Petition Date, PSNH was current on all of its payments to the holders of the Third Mortgage Bonds. However, since January 28, 1988, no payments have been made in respect thereof.

7. By order dated April 25, 1988 (the "Senior Debt Order"), this Court granted the Debtor's motion to resume interest payments on the Senior Secured Borrowing. The Debtor asserted that while such payments were not required by law, the Debtor's cash flow was adequate to make such payments and the payments would protect the Third Mortgagees against the increase in the amount of the Senior Secured Borrowing collateralized by the Bond Collateral. The Senior Debt Order also, at the

Debtor's request, provided the holders of the Senior Secured Borrowings a security interest in Post-petition Collateral (as defined in the Senior Debt Order) upon terms and conditions set forth in such Order.

8. By Motion dated May 3, 1988, the Movants requested, pursuant to Sections 361, 363(e) and 506(b) of the Bankruptcy Code, an order authorizing and requiring PSNH to make payments of interest upon the Third Mortgage Bonds as and when such payments become due.

9. The Motion is premised upon a valuation analysis of PSNH prepared by Putnam Hayes & Bartlett Inc. ("Putnam Hayes"), the financial consultants retained by the Third Mortgagees. The valuation assumes a value as of January 28, 1988 of $825 million for the non-Seabrook assets and a value as of January 28, 1988 of $169 million for the Seabrook assets (see Affidavit of John P. Merrill, Jr. ("Merrill Afft.") in support of the Motion at ¶¶ 23–24). The aggregate value of the Bond Collateral, according to the Putnam Hayes valuation, as of January 28, 1988 is therefore $994 million, or $228 million in excess of all Secured Borrowings. The Putnam Hayes valuation further assumes that the projected value of the non-Seabrook assets will increase from $825 million as of January 28, 1988 to $842 million as of December 31, 1990 because "the depreciation in the value of PSNH's assets is more than offset by reinvestment." (Merrill Afft. at ¶ 23).

10. The Movants argue that they are entitled to adequate protection in the form of current interest payments even though the Putnam Hayes valuation establishes that the value of non-Seabrook assets increases over time, and there existed at the Petition Date a present equity cushion of $228 million, if one includes, for adequate protection purposes, the $169 million in value attributed in the Putnam Hayes valuation to the Seabrook assets. The Movants so argue for three reasons.

---

* The court does not at this time determine the effect of any underwriting or original issue discounts upon the ultimate determination of the allowable amount of unpaid principal of the Third Mortgage Bonds in these proceedings.

11. First, they argue that the accrual and non-payment of postpetition interest on the Third Mortgage Bonds is eroding their equity cushion.

12. Second, they argue that while they attribute a value as of January 28, 1988 of $169 million to the Seabrook component of the Bond Collateral, there is no reliable value that can be attributed to Seabrook for adequate protection purposes because of Seabrook's uncertain future, and thus no value should be so attributed for adequate protection purposes.

13. Third, the Movants claim that while the market value of the non-Seabrook assets may be increasing over time, the net value to the Movants of such assets will erode from $825 million as of January 28, 1988 to $783 million as of December 31, 1990 due to negative cash flow.

14. Nevertheless, the Putnam Hayes valuation concludes that the value of the Bond Collateral when compared to the amount due of the Secured Borrowings as of January 28, 1988 of $766 million—including $325 million due to the holders of the Third Mortgage Bonds—results in an equity cushion of $59 million if the value of the Seabrook assets is entirely omitted. (Merrill Afft. at ¶ 23). An equity cushion of $59 million—which excludes the Seabrook assets entirely—provides post-petition interest coverage for more than 17 months, or through June, 1989, assuming average monthly interest accrues at a rate of approximately $3.45 million. (Merrill Afft. at ¶ 7).

15. Further, as the Movants acknowledge in their memorandum in support of the Motion ("Movants' Memorandum"), at "current rate levels, PSNH's cash flow over the next three years is inadequate to pay anticipated" PSNH expenses and the interest Movants now request to be paid. (Movants' Memorandum at 25).

16. Accordingly, assuming for present purposes only that all facts alleged by the Movants are true, (i) there existed, in the worst case for the Movants, on the petition Date an equity cushion of not less than $59 million in the Bond Collateral; (ii) such cushion is sufficient to cover all accruing interest on the Third Mortgage Bonds until at least June 30, 1989; (iii) the Debtor's current cash flow is not sufficient to meet expenses as projected and pay current interest on the Third Mortgage Bonds; (iv) no proof has been adduced that the Bond Collateral is physically depreciating in amounts in excess of reinvestment in such Bond Collateral; and (v) compelling the Debtor at this time to pay such interest will hinder the Debtor's reorganization effort in that it would prevent the Debtor from paying expenses as projected.

### Conclusions of Law

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a), (b), and (d), 28 U.S.C. § 157(a), (b)(1), (b)(2)(A), (E) and (O). Venue is proper pursuant to 28 U.S.C. § 1409(c).

2. Adequate protection is a flexible concept, and this Court has the "discretion and flexibility to design adequate protection remedies". *In re Helionetics, Inc.*, 70 B.R. 433, 437 (Bankr.C.D.Cal.1987).

3. Based upon the findings of fact herein, the existing equity cushion of not less than $59 million provides the Movants with sufficient adequate protection of their interest in the Bond Collateral, at least until June 30, 1989. *See, e.g., In re Palmer River Realty, Inc.*, 26 B.R. 138 (Bankr.D.R.I.1983) (8.5% equity cushion sufficient); *In re Johnston*, 38 B.R. 34 (Bankr.D.Vt.1983) (11.0% cushion adequate). The Movants' request that the Debtor provide further adequate protection in the form of current interest payments is thus premature and unnecessary.

4. The Court recognizes that upon the facts assumed, for purposes of the present order, the equity cushion available to the movants may well be below the level deemed appropriate by other courts passing upon motions for adequate protection in other chapter 11 reorganization proceedings. However, on the facts of this highly unique reorganization proceeding, dealing with a regulated electric utility company having a completed nuclear plant with additional substantial value dependant upon the

outcome of various pending regulatory proceedings, the court concludes in this instance that denying the relief requested by the movants with the level of the equity cushion assumed for purposes of the present order, and other adequate protection contained herein, is fully justified.

5. It should be noted that this court has in effect granted a form of adequate protection in its Memorandum Opinion On Plan Exclusivity Extension entered on June 22, 1988 in this proceeding, in that said order requires the debtor to take all actions possible in a period of intensive plan negotiation activity in order to be able to file a plan of reorganization in this complex case by December 27, 1988. While the court has not ruled that any further extension of the debtor's exclusivity period will not be granted, the court's order does require an unusual degree of intensive analysis and negotiating activity by the debtor and all qualified negotiating parties between now and December 27, 1988. Granting the present motion at this time, or alternatively going into an extensive valuation hearing to determine the actual facts with regarding a possible greater equity cushion, including the complex question of the value to be ascribed to the completed Seabrook Nuclear Plant, would interfere with the process directed by this court in the aforesaid order and accordingly would interfere with the debtor's reorganization effort in that sense. Not only would the parties be deflected from the important and difficult work necessary to plan negotiation but the very process of "observing" the Seabrook plant, in a premature valuation hearing, could in itself affect that value to the detriment of this estate in view of the sensitive regulatory and political issues swirling around the question of putting the plant into operation. This "observational phe-

nomenon" modifying the subject viewed is not limited to quantum physics.**

6. In view of the foregoing determinations, the Court concludes that adequate protection in the form of current interest payments is not now required and shall not now be granted. Also in view of the foregoing determinations, the court need not, and does not, now decide whether, as a matter of law, adequate protection is required for an oversecured creditor only when the value of the collateral is deteriorating, and not as protection against the accrual of postpetition interest on oversecured debt. *See, United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* — U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED:

A. Consistent with the findings of fact and conclusions of law herein, the Motion is denied without prejudice to Movants' right to renew the Motion, pursuant to Amended Order Establishing Notice Procedure, entered April 19, 1988, for a hearing no earlier than February 15, 1989.

B. As additional adequate protection, however, the Court directs the Debtor to grant, and the Debtor hereby is deemed to grant, the Third Mortgagees' a post-petition security interest in and lien on Post-petition Collateral (as defined in the Senior Debt Order), subject and subordinate to the interests of the holders of the Senior Secured Borrowing in such Collateral, upon terms and conditions comparable to those set forth in paragraph H of the Senior Debt Order.

C. In view of the foregoing disposition of the Motion, discovery, which was contemplated by the Stipulation in anticipation of an evidentiary hearing on the facts raised by the Motion, is unnecessary at this

---

** This court has made it clear at various stages of this case that it will leave environmental and public safety issues relating to Seabrook to the appropriate regulatory agencies having the expertise to deal with such matters but that it reserves all powers permitted it under the Bankruptcy Code to assure that questions relating to the financial condition and financial restructuring of the debtor remain for determination at an appropriate point in the reorganization court. The court therefore has serious concern that the relevant regulatory agencies be able to promptly come to a determination of any safety and environmental issues relating to Seabrook without being distracted by a premature "valuation sideshow" in this court that can only serve to confuse the matters appropriate for determination by such agencies.

time, and paragraphs 2 through 6, inclusive, of the Stipulation are hereby vacated.