**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Bankruptcy No. 88–00043.**

United States Bankruptcy Court,
D. New Hampshire.

July 20, 1988.

Richard Levin, R. Carl Anderson, Concord, N.H., for Public Service Co.

Joel Zweibel, Geoffrey Kalmus, New York City, J. Michael Deasy, Nashua, N.H., for the Unsecured Creditors' Committee.

John Pritchard, Anthony Marts, Manchester, N.H., for First Fidelity Bank.

George Wade, David J. Dunfey, Boston, Mass., for Citicorp and CUC, Inc.

John J. Jerome, New York City, for Shearson & Lehman Bros.

Larry M. Smukler, Concord, N.H., Daniel J. Callaghan, Frederick J. Coolbroth, Manchester, N.H., for the State of N.H.

Howard J. Berman, New York City, for the Equity Committee.

**564**

Daniel M. Glosband, Boston, Mass., for United Illuminating, New England Power, EUA Incorporation, Canal Elec. Co., and Montaup Co.

Connie L. Rakowsky, Concord, N.H., for New England Elec. Service.

Sandor E. Schick, New York City, for Eurodollar Term Loan Syndicate.

ORDER DENYING MOTION FOR ADE-
QUATE PROTECTION OF FIRST FI-
DELITY'S INTEREST IN CASH COL-
LATERAL

JAMES E. YACOS, Bankruptcy Judge.

This court considered the "Motion For Adequate Protection Of First Fidelity's Security Interest In Cash Collateral Under The Third Mortgage Indenture" (hereinafter the "Motion"), filed by First Fidelity Bank, National Association, New Jersey ("First Fidelity"), Citicorp, Consolidated Utilities Corporation and Amoskeag National Bank (hereinafter collectively referred to as the "Moving Parties"), at a hearing held on June 9, 1988. Pursuant to a stipulation among the Moving Parties, Public Service Company of New Hampshire, the debtor in possession herein ("Public Service") and the official unsecured creditors' committee herein (the "Creditors' Committee") and approved by Order of this Court (the "Procedural Stipulation"), the hearing on June 9, 1988 was limited to questions of law regarding the Motion.

Opposition to the Motion was filed by Public Service, the Creditors' Committee, the Official Equity Security Holders' Committee (the "Equity Committee"), certain joint owners of the Seabrook Nuclear Power Plan, agents for the Eurodollar and Domestic Term Loans (Orion Royal Bank, Ltd., First National Bank of Boston and Morgan Guarantee Trust Company of New York), and other parties in interest. The following facts either appear from the record of this hearing or were alleged by the Moving parties in the Motion and pursuant to the Procedural Stipulation among the parties are assumed to be true for the purposes of the hearing only:

1. First Fidelity is the Indenture Trustee and the "Third Mortgage Indenture" between Public Service and First Fidelity dated as of February 15, 1986 as amended and supplemented (the "Indenture") pursuant to which Public Service issued debentures having a face amount of $325 million (the "Third Mortgage Bonds").

2. First Fidelity holds a third priority security interest in all of the real property, equipment and other tangible assets of Public Service to secure repayment of the bonds.

3. First Fidelity also holds a security interest in the "tolls, rents, revenues, earnings, interest, dividends, royalties, issues, income and profits" (hereinafter the "Rents and Profits") of the real property, and other non-cash assets of Public Service.

4. The Indenture excludes from the security interest of First Fidelity the "cash", "accounts receivable" (the "Liquid Assets"), "electricity" and "fuel" (and certain other assets) owned by Public Service (collectively, including the Liquid Assets, the "Excluded Property"). The Indenture provides that if First Fidelity enters into and takes possession of its collateral, the Excluded Property would then become a part of the collateral of First Fidelity. The Indenture also provides that Public Service may assign, transfer, pledge or mortgage the Excluded Property, free and clear of the lien of First Fidelity which would otherwise attach upon default and entry into possession.

5. This chapter 11 case was filed on January 28, 1988 (the "Petition Date"). As of the Petition Date, Public Service was not in default under the Indenture and First Fidelity had not entered into or taken possession of its collateral.

6. On or about February 4, 1988, First Fidelity sent a notice pursuant to Section 546(b) of the Bankruptcy Code, 11 U.S.C. § 546(b) (the "§ 546(b) Notice"), to Public Service alleging that by virtue of such notice it had a perfected security interest in the Excluded Property, a "substantial portion" of which "constitutes cash collateral"

claimed by First Fidelity. The § 546(b) Notice did not claim an interest in the Rents and Profits.

7. On or about May 11, 1988, the Moving Parties filed the Motion. In the moving papers and supporting affidavits the Moving Parties alleged that:

A. All or substantially all of the income of Public Service is the Rents and Profits of the non-cash assets of Public Service in which First Fidelity holds a security interest;

B. Although prior to the filing of this chapter 11 case, Public Service was permitted by the Indenture to collect and utilize its cash income, First Fidelity "perfected" its security interest in the cash income of Public Service by serving Public Service with a notice pursuant to 11 U.S.C. § 546(b);

C. Public Service's income arising after the date of First Fidelity's § 546(b) Notice constituted cash collateral of First Fidelity;

D. First Fidelity lacked adequate protection of its security interest in cash collateral; and

E. Public Service should be ordered to pay interest on the Third Mortgage Bonds as adequate protection for Public Service's use of First Fidelity's cash collateral.

8. The various papers filed in opposition to the Motion contended that:

A. The Indenture specifically excluded cash collateral from the security interest of First Fidelity unless and until First Fidelity actually took possession of the collateral;

B. The § 546(b) Notice was not effective since the perfection of First Fidelity's security interest in cash collateral would not have been effective against an entity that acquired rights in the cash collateral before the date of the notice as a result of the terms and structure of the Indenture;

C. By the terms of the Indenture and as a matter of generally applicable law including the New Hampshire Uniform Commercial Code, First Fidelity's security interest in the Excluded Property (including the cash collateral) could not be effective against and was subordinate to the rights of an entity acquiring rights in the cash collateral, including a judicial lien creditor, before First Fidelity's interest in the Excluded Property was acquired or perfected;

D. The income of Public Service and the Liquid Assets evidencing or giving rise to such income, is not the Rents and Profits of First Fidelity's non-cash collateral but instead was the income generated by the operation of Public Service's business as an electric utility. Rents and Profits are only the direct proceeds of the tangible assets (such as land and buildings) included in the collateral; and

E. Even if First Fidelity had a security interest in the income of Public Service, that security interest is adequately protected.

Based upon the facts set forth above which either appear from the record of this hearing or are assumed to be true for purposes of this hearing only based upon the Procedural Stipulation, the contentions of the parties outlined above and the legal arguments contained in the moving and opposing papers, the Court reaches the following conclusions of law.

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a), (b), (d) and 157(a). This is a core proceeding as defined by 28 U.S.C. §§ 157(b)(A), (M) and (O). Venue is proper in this District pursuant to 28 U.S.C. § 1409.

2. Prior to the Petition Date, First Fidelity did not have an enforceable lien on or security interest in the cash collateral or any of the other Excluded Property.

3. Although First Fidelity had a contractual right to acquire a lien upon the Excluded Property after default and entry into possession of the collateral, that lien (a) was not acquired prior to the Petition Date since First Fidelity had not entered into or taken possession of its collateral; and (b) became subject to Public Service's rights as a debtor in possession under 11 U.S.C. § 544(a).

4. First Fidelity's § 546(b) Notice was ineffective to acquire, perfect or otherwise render enforceable the inchoate claim

of First Fidelity in excluded property because: (a) such claim was not acquired, perfected, enforceable or choate prior to the Petition Date and (b) under New Hampshire law, if the security interest had been created, enforceable or choate as of the filing of the petition, the perfection of the security interest in excluded property would not have been effective against an entity acquiring rights in the excluded property prior to the date on which First Fidelity's security interest in such excluded property was perfected, enforceable and choate, *In re Prichard Plaza Associates Partnership*, 84 B.R. 289 (Bankr.D.Mass. 1988) and *Exchange National Bank v. Gotta (In re Gotta)*, 47 B.R. 198 (Bankr.W. D.Wis.1985).*

■ 5. Furthermore, even if First Fidelity had a perfected security interest in the cash collateral, that interest would be adequately protected by, *inter alia,* the equity cushion of First Fidelity in all of its collateral as set forth in the Order Denying the Third Mortgagees' Motion For Adequate Protection In the Form of Current And Continuing Interest Payments Under the Third Mortgage Bonds, also entered by the Court on the date hereof.

Based upon the foregoing, it is hereby

ORDERED, ADJUDGED and DECREED that the Motion of the moving Parties be and it is hereby denied.

---

* The court also heard argument at the hearing concerning the alternative contention as noted in paragraph 8D above that, even if the court should determine that the movants could use the § 546(b) Notice for the purpose asserted, the thus perfected lien still would not as a matter of applicable lien law reach the net income (including the excluded property giving rise to or evidencing such income) of the debtor in reorganization. It is noted that the documents in question include a reference to "income" but not "net income." Upon reflection, and considering the complex historical and legal nuances surrounding the indenture language in question, as applied to the practicalities of a reorganization under chapter 11 of the present Bankruptcy Code, and the lack of time to carefully consider this important matter in the present case, the court expresses no opinion as to this alternative contention unnecessary to its decision.