**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Bankruptcy No. 88–00043.**

United States Bankruptcy Court, D. New Hampshire.

Aug. 5, 1988.

Richard Levin, Los Angeles, Cal., for Public Service Co.

Virginia A. Greiman, U.S. Trustee.

Mark W. Vaughn, Manchester, N.H., Larry M. Smukler, Sr. Asst. Atty. Gen., Concord, N.H., for State of N.H.

Richard Gagliuso, Nashua, N.H., Jeffrey Kalmus, Joel B. Zweibel, New York City, for Unsecured Creditors' Committee.

Howard J. Berman, Centereach, N.Y., for Equity Committee.

**1016**

Peter Wolfson and Robin Weinstein, New York City, for movants.

Anthony C. Marts, Manchester, N.H., for Amoskeag Bank as Indenture Trustee.

George J. Wade, New York City, for Citicorp and Consolidated Utilities & Communications (CUC).

Joseph Chervin, New York City, for IVJ Schroeder Bank and Trust Co. as Indenture Trustee.

Paul R. DeFilippo, Newark, N.J.,

## MEMORANDUM OPINION RE MOTION TO APPOINT SEPARATE DEBENTUREHOLDER COMMITTEE AND RELATED RELIEF

JAMES E. YACOS, Bankruptcy Judge.

This case came before the court for an evidentiary hearing on July 29, 1988 upon a motion filed by individual debentureholders relating to their alleged under-representation upon the existing Official Unsecured Creditors' Committee (hereinafter "committee" or "creditors' committee") in this chapter 11 proceeding. The motion as originally filed, on June 9, 1988, sought an order directing the appointment of a separate official committee for debentureholders in this case. In an affidavit submitted on July 14, 1988, the day before the initial hearing scheduled on this motion on July 15, 1988, the movants indicated as an alternative request that additional *individual* debentureholders be added to the existing creditors' committee and that a subcommittee including such individual debentureholders be formed within the main creditors' committee. At the continued hearing on July 29, 1988 the movants orally amended their request to add as a "last resort" an alternative request that individual debentureholders be added to the existing committee even if no subcommittee was directed to be formed.

The scope and complexity of this chapter 11 reorganization proceeding dealing with a regulated monopoly utility entity, including a completed but not fully licensed nuclear power plant, is relevant background context to the present matter but will not be repeated here. This court in several prior orders and opinions has set forth that complexity. See, e.g., 84 B.R. 1 (March 17, 1988, decision re complex reorganization procedures); 86 B.R. 7 (April 22, 1988, decision re replacement counsel retention); 88 B.R. 518 (June 7, 1988, decision re advisor retention for merger and acquisition services); 88 B.R. 521 (June 22, 1988, decision re exclusivity extension); 88 B.R. 546 (June 22, 1988, decision re intervention motions); 88 B.R. 558 (July 20, 1988, decision re adequate protection interest payments); 88 B.R. 563 (July 20, 1988, decision re cash collateral motion).

### PROCEDURAL CONTEXT

It is necessary to set forth in some detail the procedural context within which the court finds the present motion in the progress of this reorganization proceeding.[1] The chapter 11 voluntary petition in this case was filed by the debtor on January 28, 1988. On February 11, 1988 the U.S. Trustee pursuant to § 1102(a) of the Bankruptcy Code appointed an official unsecured creditors' committee consisting of nine voting members.[2] Of the nine voting members, two members of the original committee were indenture trustees for various issues of the unsecured debentures; four members were institutional holders of such debentures; and three members were trade creditors.

On March 11, 1988 this court entered an order appointing committee counsel for the creditors' committee as selected by the then-existing committee. Shortly thereafter two of the institutional debentureholders resigned from the committee and resumed trading in the PSNH debentures.

---

1. At the conclusion of the July 29, 1988 hearing the court dictated certain findings and conclusions into the record, which are incorporated by reference herein. The court further amplifies those findings and conclusions by virtue of this Memorandum Opinion.

2. Subsequently, the U.S. Trustee appointed the State Street Bank & Trust Company as a tenth, non-voting "ex officio" member of the committee.

On April 20, 1988 the U.S. Trustee filed an amendment indicating the resignation of those institutional debentureholders.

On April 27, 1988 the U.S. Trustee met with several individual debentureholders, including the present movants, with regard to their informal request that a separate committee of debentureholders be formed in this case to protect the interests of individual unsecured debentureholders. On May 10, 1988 the U.S. Trustee sent a letter to the individual debentureholders who had attended the April 27th meeting, stating that she did not feel it appropriate to appoint a separate individual debentureholder committee but would consider the movants for appointment to the existing committee if they so requested.

On the same date, May 10, 1988, the U.S. Trustee filed an amendment in this court indicating that she had appointed two new members to the existing committee, i.e., Carl R. Faust and Herman Gross, as replacements for the two resigned committee members. Messrs. Faust and Gross are individual bondholders but were not among those who attended the April 27th meeting. The movants have never expressly asked that they themselves be appointed to the existing committee.

After the May 10th action by the U.S. Trustee the creditors' committee consisted of the same components, and the same ratios, with the substitution of Messrs. Faust and Gross as indicated for two of the previously appointed institutional debentureholders. A listing of the creditor committee members as of that date, and as of the initial hearing date on the present matter on July 15, 1988, is attached as an annex to this opinion.[3]

On June 9, 1988 the present motion was filed by four individuals, of whom two subsequently withdrew, leaving as the proponents of the motion individual debentureholders Anthony B. Walsh and Jeffrey Rosmarin. This motion was scheduled for a hearing before the court, in accordance with existing motion and notice practice orders in this proceeding for hearing on July 15, 1988. On July 14, 1988, the previously mentioned affidavit by Mr. Walsh was filed with the court. On the same day an affidavit was also filed in support of the motion by Mr. Faust, one of the individual debentureholders already on the existing creditors' committee.

The affidavit filed by Mr. Faust reflects a dispute between himself and other members of the committee as to the timing and nature of necessary committee decisions with regard to the question of operation or nonoperation of the Seabrook Nuclear Plant. The affidavit further reflects Mr. Faust's views as to the conflicts between the various members of the committee as to that issue and his contention that he had been "stonewalled" by the other committee members in getting necessary data and responses concerning his various inquiries.[4]

---

**3.** This listing comes from an exhibit attached to the response by the creditors' committee to the present motion. The institutional bondholder members of the committee included in the listing are Equitable Capital Management Corp., and Integon Life Insurance Corp.; the indenture trustee members of the committee are IBJ Schroder Bank & Trust Company and Midlantic National Bank; the trade creditors are Hemphill Power & Light, New Hampshire Hydro Association and United Engineers & Constructors, Inc.; and the individual bondholders are Messrs. Faust and Gross as indicated above. Equitable Capital serves as Chair of the committee.

**4.** It later developed at the July 29th trial, at which Mr. Faust testified, that he had supplied all committee members and the U.S. Trustee with letters expressing his views accompanied by voluminous attachments on several occa-

sions, i.e., May 19th, June 1st, June 9th, and June 20th, and vociferously had pressed his view on the matter at committee meetings held on May 20, 1988 and June 29, 1988. Because of the sensitivity of the Seabrook issue in view of ongoing regulatory proceedings and hearings dealing with that plant, the court ordered at the conclusion of the June 29th hearing that the exhibits in this regard received at the hearing be sealed pending further order of the court. Suffice it to say that the dispute between Mr. Faust and other members of the committee related largely to Mr. Faust's insistence that analysis and action be taken to determine a committee position with regard to the Seabrook nuclear plant much earlier than the other committee members felt appropriate. The committee itself has to date *not* taken any position with regard to the Seabrook nuclear plant in these proceedings.

The court called the matter for hearing on July 15, 1988, among a number of other pending motions in this case, and was advised by all parties that a settlement of the matter was imminent. A joint request was made that the court continue the hearing on the matter until the next regularly scheduled hearing in this case on July 29, 1988. The court complied with this request, although it noted at the time that the delay in submission of the request for a separate committee following the original filing of these proceedings was itself a factor to be considered in any decision.

On July 20, 1988 the creditors' committee held a meeting during the course of which the chair of the committee, the representative for Equitable Capital Management Corp., requested that Mr. Faust resign from the committee. Faust refused, whereupon the committee by majority vote resolved to ask the U.S. Trustee to remove Mr. Faust from the committee. No specific reason was given to Mr. Faust at the meeting for this action other than some general comments about his demeanor at various committee meetings.

On the same day, July 20, 1988, the committee dispatched a letter by Federal Express to the U.S. Trustee which in its entirety stated as follows:

> Pursuant to a determination at a meeting of the Official Creditors' Committee held today, we request on behalf of the Committee that the appointment of Mr. Carl Faust to the Committee be rescinded.
>
> In order to retain its existing balance the Committee is seeking to identify an individual debentureholder to serve in place of Mr. Faust; we hope to be able to make a suggestion to you for a replacement within ten days. In the meanwhile, we ask that you refrain from any action

to appoint a substitute Committee member.

On July 22, 1988, the U.S. Trustee sent a letter to Mr. Faust advising that she was removing him from the creditors' committee effective that date. The U.S. Trustee's letter in its entirety reads as follows:

> On request of the Creditors' Committee as indicated in the attached letter and pursuant to my responsibilities under § 1102 of the Bankruptcy Code after careful deliberation I am hereby rescinding your appointment to the creditors' committee effective July 22, 1988. I thank you for your past service on the committee.

The matter finally came before the court for full hearing on July 29, 1988 with testimony received from Mr. Faust and Mr. Walsh, proffered by the movants; with further testimony from the representative from the chair of the committee and from Mr. Gross. Various documentary evidence was also received. The entire hearing extended over a period in excess of eight hours.[5]

## APPOINTING SEPARATE COMMITTEE

At the conclusion of the July 29th hearing I stated that I would not give any weight in my decision to the assertion by the movants that the indenture trustee members of the committee do not give adequate representation to debentureholders because of the alleged "passivity" of such entities by their nature and the terms of their indentures. For one thing, Mr. Walsh in his own testimony admitted that at least one of the indenture trustees was unusually active in the proceeding. For another thing, I accept the U.S. Trustee's argument and her response to the motion to the effect that even if the court were to assume such passivity that factor could only *in-*

5. Unfortunately the U.S. Trustee was unable to be at the July 29th hearing and accordingly this court has no basis for determining whether she might have received additional information regarding the requested removal of Mr. Faust aside from the documentary evidence submitted at the hearing. However, no evidence was proffered by committee members that they gave the U.S. Trustee any additional information or justi-

fication for their requested removal. The U.S. Trustee's deputy present at the July 29th hearing likewise proffered no such additional information. On the record before it therefore, and time being of the essence, this court necessarily must find that the only representation with regard to the requested removal is that included in the letter of July 20, 1988 from the committee.

*crease* the influence of the individual bondholders on the committee. It is true that there is some building conflict as to whether indenture trustees may or should appropriately be members of creditors' committees in chapter 11 proceedings. See, *In re Beker,* 55 B.R. 945, 950 (Bankr.S.D.N.Y. 1985); *In re McLean Industries Inc.,* 70 B.R. 852, 862 (Bankr.S.D.N.Y.1987); *In re Charter Company,* 42 B.R. 251 (Bankr.M.D.Fla.1984). The court declines to enter into that major dispute—particularly on this record and considering the oblique way in which the question has been raised here —and since in any event it is unnecessary to do so for present purposes.

I likewise find unpersuasive the assertions by the movants that the chair of the committee has a conflicting interest in view of the prior statements by an employee of one of its subsidiary corporations with regard to the likelihood of the Seabrook nuclear plant going on line. The evidence indicates that appropriate insulation of committee activity is in place by the representative of the chair and I am satisfied that it will honor its fiduciary obligations as a member of the committee without any concern regarding that matter.

The movants did establish that individual debentureholders would benefit from an increased voice in the conduct of these chapter 11 proceedings, and thus more adequate representation, in the sense that individual debentureholders normally will prefer a much quicker resolution of a reorganization than entities with "greater staying power" or entities who might want to continue doing business with the reorganized company. The movants have also established that none of the present members of the committee, with the exception of the chair and the indenture trustees, have had experience serving on prior committees in chapter 11 proceedings.[6]

■ Moreover, the court cannot ignore the summary dismissal of Mr. Faust, one of the individual bondholder members of the committee, by a majority vote of the committee and immediate compliance by the U.S. Trustee in the requested removal of Mr. Faust, as evidenced by this record. While the evidence indicates that Mr. Faust had rather strong views about the necessity and timing of action relating to Seabrook, and perhaps was even a little obnoxious in expressing the same, the existence of strong and diverse views is not per se a disqualification for service on a creditors' committee in a chapter 11 proceeding. See *Matter of Baldwin–United Corp.,* 45 B.R. 375, 376 (Bankr.S.D.Ohio 1983); *In re M.H. Corporation,* 30 B.R. 266 (Bankr.S.D.Ohio 1983). Indeed, in a courtroom filled with extremely well-experienced chapter 11 reorganization counsel, at the hearing on July 29, 1988, no one could point to a prior instance in any chapter 11 case in which an outspoken member was "voted off the committee" in this manner. This development does not serve to enhance the feeling that individual debentureholders are adequately represented in the present situation.[7]

■ Upon the entire record presented to me as a result of the July 29, 1988 hearing, I conclude that the movants have established that there is a question of adequate representation of individual debentureholders in these proceedings. There according-

6. Neither the removed individual debentureholder member of the committee, Mr. Faust, nor the existing member, Mr. Gross, have ever served upon a chapter 11 committee before. Mr. Walsh, one of the present movants, according to the testimony received has served on committees in a considerable number of the major chapter 11 cases filed in this country during the past ten years. He has served on both creditor and equity committees in such cases. The representative of the chair of the creditors' committee in this case testified without hesitation that Mr. Walsh's experience would be useful and that he had strong qualifications for membership on the existing committee. The U.S. Trustee apparently did offer Mr. Walsh a place on the present committee, as indicated above, but he declined in lieu of pursuing his motion for appointment of a separate committee.

7. Any legal issue with regard to the removal of Mr. Faust is not presently before this court and the court accordingly does not express any opinion should such issue be brought before the court on an appropriate motion with a full evidentiary record surrounding that event. Mr. Faust himself neither formally or in his testimony before this court indicated any desire to return to the committee.

ly is no question that they would "benefit" from the appointment of a separate committee of individual debentureholders in that sense. However, in my judgment the record does not establish that the remedy by appointment of a separate committee is justified at this time and at this stage in this case. Considering the delay and disruption of the proceedings that such appointment would entail, I believe that a lesser remedy is available, as indicated below, that will adequately serve to protect the interests of individual debentureholders.

Bankruptcy Courts generally have been reluctant to appoint separate committees of unsecured creditors notwithstanding the diverse and sometimes conflicting interest of such creditors in the context of a chapter 11 proceeding. See, e.g., *In re Johns-Manville Corp.*, 68 B.R. 155 (Bankr.S.D.N.Y.1986); *In re Shaffer–Gordon Associates, Inc.*, 40 B.R. 956 (Bankr.E.D.Pa.1984); *In re Saxon Industries, Inc.*, 39 B.R. 945 (Bankr.S.D.N.Y.1984). *In re Baldwin–United Corp.*, 45 B.R. 375 (Bankr.S.D.Ohio 1983). See also, *5 Collier on Bankruptcy,* ¶ 1102.02 (15th Ed.1988). Considerations of cost and overburdening complexity in the conduct of the proceedings are often mentioned. See, e.g., *Johns–Manville Corp.*, 68 B.R. at 160; *In re Texaco, Inc.*, 79 B.R. 560, 567 (Bankr.S.D.N.Y.1987).

In the present case, this court by a number of recent orders has attempted to provide for a period of relative "distraction-free" time for the existing committees, debtor, and other qualified negotiating parties to hopefully reach a consensual plan of reorganization by the end of this year. The various time urgencies in that regard are spelled out in the prior decisions in this case cited above. The court early in the conduct of these proceedings encouraged quick formation of committees at general status conference hearings held on February 26, 1988 and March 11, 1988, and indicated its willingness to consider various committee appointment requests promptly. To belatedly interject a separate additional committee into these proceedings at the present stage of this reorganization simply is not justified for those delay and disrup-

tion factors alone. I also take into consideration that such an appointment would be unprecedented since apparently no separate committee of *individual* debentureholders has ever been appointed in a reported decision in a prior chapter 11 case.

For all of the foregoing reasons the court concludes that the motion before it must be denied to the extent that it requests the appointment of a separate committee of individual debentureholders or the creation by court order of a subcommittee of individual debentureholders within the present Official Unsecured Creditors' Committee.

## EXPANDING EXISTING COMMITTEE

▪ The foregoing disposition leaves remaining the question of whether this court can and should direct that the existing unsecured creditors' committee be expanded to include additional individual debentureholders as a form of assuring adequate representation of their interest in this reorganization proceeding. As indicated above I do agree that the individual debentureholder should be granted an additional and an enhanced voice in these proceedings, based upon the particular facts of this unique case. There is a statutory question, however, due to a 1986 amendment to § 1102 of the Code, as to whether a bankruptcy court retains the power to *alter* the makeup of an existing committee.

Prior to 1986, there was no question under § 1102 of the Bankruptcy Code that the bankruptcy court could provide this alternative remedy. Subsection (c) of that section then provided that the court could "change the membership or the size of the committee" upon an appropriate application. That subsection was deleted in the 1986 Amendments which also amended subsection (a) of the section to provide that the United States Trustee, rather than the bankruptcy court, was to make the initial appointment of a committee of creditors holding unsecured claims. The legislative history for this amendment indicates that Congress viewed that appointment duty as "an administrative task" better handled by

the United States Trustee. See *HR Report No. 99–764*, 99th Cong.2nd Sess. 28 (1986), U.S.Code Cong. & Admin.News 1986, 5227.

Following the 1986 Amendment, there have been some conflicting comment in dicta as to whether the bankruptcy court retains the power to affect the composition of an existing committee during the course of a reorganization proceeding. Cf. *McLean Industries, Inc.*, 70 B.R. at 856, fn. 2; *In re Texaco, Inc.*, 79 B.R. at 566.[8]

There is unfortunately no legislative history to indicate the legislative intent surrounding the deletion of subparagraph (c) of former § 1102. Collier states that.... "the matter of the authority to alter the composition of the committee, and possible grounds for such action, now become issues to be resolved by the courts." *1 Collier on Bankruptcy*, ¶ 6.13 p. 6–65 (15th Ed.1988).

Whatever the ultimate resolution of this statutory question may be, in terms of any power of the court to affect the initial formulation of the creditors' committee in a chapter 11 proceeding, the present matter before me can be resolved without reaching that question. As indicated above, the present motion and the record might well support the appointment of a separate committee but for the delay and disruption factors discussed. I believe therefore that the court necessarily has the inherent power to provide a "lesser included remedy" of simply directing expansion of the existing committee. There was no question concerning that power prior to the 1986

amendment. See *In re Salant Corporation*, 53 B.R. 158 (Bankr.S.D.N.Y.1985).

■ Nothing in the present statute expressly prohibits the continued existence of the power to alter the structure of a committee following the *initial* appointment of the committee by the U.S. Trustee if and when an asserted justification requiring a *judicial* determination (rather than an administrative action by the U.S. Trustee) is brought before the court during the conduct of the proceedings.[9] Indeed, an analogous exercise of such power has occurred following the 1986 Amendment as noted in the discussion of the *Texaco* decision above.

■ Accordingly, as announced at the conclusion of the July 29th hearing, the court will enter an order directing the U.S. Trustee to replace the present vacancy created by the removal of Mr. Faust with another individual debentureholder, together with the appointment of two additional individual debentureholder members to the existing creditors' committee. In selecting individuals to serve on the committee under the terms of this order the U.S. Trustee shall have full discretion in determining those individuals to be appointed but shall not accept recommendations of individuals from committee members who are not themselves individual debentureholders. Based on the record, the U.S. Trustee is encouraged, but not required, to appoint individuals with prior chapter 11 experience if at all possible.

---

8. In *Texaco* the court did in fact order the expansion of the existing general creditors' committee by adding to that committee the members of a prior separate unsecured committee. See 79 B.R. at 568. The decision is usually discussed however in terms of a "merging" of two committees.

9. It should be noted that the decision in the present case is not intended to infringe upon the U.S. Trustee's administrative function in the initial appointment of a creditors' committee, and in making routine adjustments to the committee

upon resignations etc. Nor does the court have any appropriate concern or power regarding the *selection* of particular individuals to serve on a committee under any orders it may enter concerning a committee following the 1986 amendment. That power remains with the U.S. Trustee. I simply hold here that a judicial issue is created when a committee has become embroiled in the progress of a chapter 11 reorganization and the change in composition of the committee arises as a result of disputes appropriately brought before the court for resolution.