**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Bankruptcy No. 88–43.**

United States Bankruptcy Court, D. New Hampshire.

Feb. 9, 1990.

See also, Bkrtcy., 112 B.R. 49.

Richard Levin, for Public Service Co.

Richard C. Gagliuso, for Unsecured Creditors Committee.

Howard J. Berman, for Equity Committee.

Mark W. Vaughn and Harold T. Judd, for the State of N.H.

Susan N. Kenneally, for the U.S. trustee.

John B. Nolan and Jeffrey G. Grody, for Northeast Utilities Service Co.

George A. Hahn, for Paul Gioia, Examiner.

Barbara J. Gould, for CUC and Citicorp.

Robert C. Richards, pro se and for Martin Rochman.

## ORDER RE MOTION FOR COMMON STOCKHOLDERS COMMITTEE

JAMES E. YACOS, Bankruptcy Judge.

This matter came on for hearing on February 2, 1990, upon the Motion of Martin Rochman and Robert Richards for Order Appointing an Official Committee of Common Stockholders. The Motion in question was filed on January 12, 1990. The Court has reflected on those arguments, as well as the written pleadings on this matter and the record in this case, and hereby denies said Motion on the following grounds:

1. This chapter 11 case was commenced by a voluntary petition filed on January 28, 1988. The unique nature and complexity of this case of a debtor that is a regulated monopoly electric utility company has been set forth in prior opinions of this court. See, e.g., *In re PSNH*, 88 B.R. 521 (Bankr. D.N.H.1988); *In re PSNH*, 88 B.R. 546 (Bankr.D.N.H.1988); *In re PSNH*, 99 B.R. 155 (Bankr.D.N.H.1989); and *In re PSNH*, 99 B.R. 177 (Bankr.D.N.H.1989).

2. Following a long and tortious process this case in September 1989 had plans of reorganization filed by multiple, competing plan proponents and, under a series of procedural orders entered by the Court, there commenced a grueling sequence of hearings in November and December of 1989 consuming more than ten trial days resulting in an order entered December 8, 1989 approving a disclosure statement on a joint plan of reorganization. A further procedural order then was entered on January 3, 1990 setting forth requirements for mailing the disclosure materials to creditors and stockholders, for voting on the plan, and for a confirmation hearing to commence on April 4, 1990.

3. No case cited to this court or independently found by this court has authorized the appointment of an additional committee after the disclosure statement hearing has been closed and the disclosure statement approved and before a scheduled confirmation hearing.

4. Courts generally do not look with favor on authorizing committees late in the reorganization process due to delay and disruption. *See, e.g., In re Johns–Manville Corp.*, 68 B.R. 155 (S.D.N.Y.1986); *In re Public Service Co. of N.H.*, 89 B.R. 1014, 1020 (Bankr. D.N.H.1988) (and cases cited). The *PSNH* decision cited above was rendered in August of 1988 and denied a request to appoint a separate committee of individual debenture holders. It was noted that the Court at the outset of these proceedings encouraged quick formation of committees in this case at conference hearings held in February and March of 1988 and that the individual debenture holder committee requested by a motion filed in June of 1988 would "belatedly interject" an additional committee that would cause unjustified delay and disruption in the proceeding. 89 B.R. at 1020.

5. Some conflicts between members of committees or their interests are expectable and do not per se warrant authorizing an extra committee especially considering the added cost and complexity that appointing a committee would bring to the proceedings. *See In re Sharon Steel Corp.*, 100 B.R. 767 (Bankr.W.D.Pa.1989); *In re Public Service Co. of N.H.*, 89 B.R. 1014 (Bankr.D.N.H.1988); *In re Texaco, Inc.*, 79 B.R. 560 (Bankr.S.D.N.Y.1987); *In re McLean Indus. Inc.*, 70 B.R. 852 (Bankr.S.D.N.Y.1987); *In re Schaffer–Gordon Assoc. Inc.*, 40 B.R. 956 (Bankr.E.D.Pa.1984).

6. It is conceded in the present case that granting the Motion for the Appointment of a Common Stockholder Committee will necessarily result in subsequent motions and appointment of attorneys and financial advisors to the new committee. In my judgment such appointments will necessarily delay and disrupt the scheduled confirmation hearings in order for such new professionals to be made knowledgeable about the history of this Chapter 11 proceeding and all factors bearing upon confirmation of the pending plan of reorganization.

7. There has been no showing that the existing equity committee does not adequately represent the interests of common as well as preferred stockholders in the circumstances of this case. The makeup of the committee has been known to all parties since originally appointed by the U.S. Trustee at the outset of the case and, until the present Motion was filed, no common stockholders aside from Mr. Rochman and Mr. Richards have challenged the makeup of the committee as not being representative or involving an impermissible conflict.

8. The movants believe the underlying compromise with the State of New Hampshire on rate increases for the reorganized company does not give sufficient weight to the possible rate increases that the company might achieve if the pending plan is not confirmed and the debtor proceeds with a litigated rate case once the Seabrook nuclear power plant comes on line. The movants believe that the present plan proponents, including the equity committee, will not make an appropriate showing before the Court as to the possibilities of rate litigation as part of a showing that the compromise included within the plan of reorganization is fair and equitable. However, the plan proponents will have the burden at the confirmation hearing of establishing on the record that the compromise is fair and equitable—including a showing as to the range of possible results that might come out of a litigated rate case—as a factor in determining whether the plan is in the best interest of creditors and stockholders under § 1129(a)(7) of the Bankruptcy Code. The Court will have to make an affirmative finding in that regard to support confirmation of the pending plan.

9. The Court also notes in this regard that by Order entered April 3, 1989 the Court appointed Paul Gioia, a former Chairman of the New York Public Service Commission, as Examiner in these proceedings under § 1104 of the Bankruptcy Code, and has appointed George Hahn, Esq. of New York City, as his attorney in these proceedings. The Court expects to receive knowledgeable analysis and information from the Examiner and his attorney at the confirmation hearing with regard to the range of possible results in a litigated rate case with the State of New Hampshire should the pending plan of reorganization not be confirmed. To the extent that the existing orders appointing the Examiner and his attorney may be restrictive in that regard they are hereby amended and expanded *pro tanto* to assure this Court will have the requisite information to make the best interest finding under § 1129(a)(7) of the Bankruptcy Code at the confirmation hearing.

10. Nothing in this Order denying appointment of a committee will prevent Messrs. Rochman and Richards from opposing in their individual capacities as common stockholders the confirmation of the plan of reorganization under the scheduling order. Moreover, under § 503(b)(3) and (b)(4) of the Bankruptcy Code should their activity in this case result in the making of a substantial contribution to the case as therein provided they have the possibility of recovering their fees and expenses in that regard as an administrative expense of this estate.

11. Finally, it should be noted that the reluctance of this and other courts to appoint additional committees late in the reorganization process—and particularly after the disclosure statement hearings have been closed—is a function of the importance to the Chapter 11 reorganization process of meaningful and effective deadlines for plan formulation. This is especially true with regard to the approval of the requisite disclosure statement permitting a plan to go forward for vote on confirmation. Much that makes Chapter 11 work is the result of the pressure put on the parties and interests to "put their best foot forward" in the plan formulation process before the disclosure statement hearings are closed and the plan confirmation procedures commence. The present case, in its history during the August through December 1989 period, amply illustrates the constant improving of contending plans under this competitive time pressure leading to the closing of the disclosure statement hearings.

12. The question as to the makeup of the equity committee in this case could have been raised at any time prior to the closing of the disclosure statement hearings but was not. To order an additional committee now on that ground, even if it arguably might have been ordered earlier in the case, would be a precedent that would inevitably weaken the force of the procedures and deadlines necessary to effective plan formulation in Chapter 11 cases.

DONE and ORDERED.