**In re SHARON STEEL CORPORATION,**
Debtor.

**Bankruptcy No. 87–207E.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 7, 1989.

768

M. Bruce McCullough, and Thomas Van-Kirk, of Buchanan Ingersoll, P.C., Pittsburgh, Pa., and Jeffrey Sabin, of Schulte, Roth and Zabel, New York City, for Debenture Group.

Stephen Goldring, Asst. U.S. Trustee and for U.S. Trustee, Hugh Leonard, Pittsburgh, Pa.

Herbert Minkel, of Fried, Frank, Harris, Schriver and Jacobson of New York City and Philip Beard, of Stonecipher, Cunningham, Beard and Schmitt of Pittsburgh, Pa., for the Official Committee of Unsecured Creditors.

Bernhard Schaffler, of Schaffler and Bohm, Pittsburgh, Pa., and T. Lawrence Palmer, of Rose, Schmidt, Hasley and DiSalle, Pittsburgh, Pa., for Trustee, Franklin Agnew.

Melvin Sander, Gen. Counsel, for debtor, Sharon Steel Corp., Sharon, Pa.

Richard Cierri, of Jones, Day, Reavis and Pogue, Cleveland, Ohio, for Cleveland Cliffs Iron Co. and Tilden Iron Ore Partnership.

Robert Sable, of Lampl, Sable, Makoroff and Libenson, Pittsburgh, Pa. and Paul Bindler, of Rosenman and Colin, New York City, for IBJ Schroder Bank and Trust Co.

David Murdoch, of Kirkpatrick and Lockhart, Pittsburgh, Pa., for Mellon Bank.

Michael Blumenthal, of Haythe and Curley, New York City, former Atty. for Victor Posner, DWG and MVF.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

In question is the validity of the NOTICE OF APPOINTMENT OF INTERIM COMMITTEE OF DEBENTURE HOLDERS issued by the U.S. Trustee dated January 27, 1989, which appears to have the effect of an order and which creates an interim committee of debenture holders from part of the membership of the Official Committee of Unsecured Creditors, thereby effectively vacating the order of this court dated May 5, 1987 made after notice and hearing.

### Background and Procedure

On April 17, 1987, the same day the case was filed, the court had appointed the Official Committee (under § 1102 as it then existed), whose original membership was comprised of: Mellon Bank, as indenture trustee, Manufacturers Hanover Bank, Blue Cross, Tilden Iron Ore Partnership, Atlas, Hilty, Inc., IBM, Bearings, Inc. and B.M.I.

A Motion for Reconstitution was filed by Alfred Tyll ("Tyll") and Anthony Ben Walsh ("Walsh") on April 23, 1987 seeking to alter the composition of the Official Committee of Unsecured Creditors ("Official Committee" or "Committee") on the ground that the trade creditors were over-represented relative to the aggregate amount of their claims, which concomitantly resulted in the under-representation of holders of the Sharon Steel 13½% and 14¼% Subordinated Debentures.

The Motion for Reconstitution proposed an Official Committee membership that "more closely reflect[ed] the composition of the creditor body and more fairly represent[ed] those creditors which have the largest stake in this case." The proposal suggested an eleven member Official Committee, with holders of Debentures occupying six of the seats, which assured them a "slim and well-balanced majority." Objections to the Motion were filed by various parties, and this court conducted a hearing thereon on May 1, 1987, with respect to the issue of the adequacy of the representation provided by the Official Committee.

At the May 1 hearing, the notion of a separate committee for debenture holders was advanced, but met with general disfavor in view of the obvious complexities it would create, complicating negotiations of

the then Debtor in Possession [1] with the EPA, the PBGC, the IRS, the union, and current lenders by a geometric progression; the "one-stop shopping" expression of the preferability of one committee, seemed to be the prevailing and unopposed sentiment. Peter D. Wolfson, Esq., counsel for Walsh and Tyll indicated support for a reconstitution of the Official Committee that would provide for a committee composed of six holders of debentures, six trade creditors, plus the United Steel Workers of America. No proposal had general approval, but that suggestion seemed to arouse very little hostility; the court concurred, so this court entered the May 5th Order, reconstituting the Official Committee and appointed as members: Quantum Overseas N.V. ("Quantum"), Neuberger & Berman ("Neuberger"), Anthony Ben Walsh, Alfred Tyll, Raymond E. Shea, Sr., Mellon Bank,[2] appointed as indenture trustee, Cleveland Cliffs Iron Company/Tilden Iron Ore Partnership ("Cleveland Cliffs"), Atlas Energy Group, Inc. ("Atlas"), International Business Machines ("IBM"), Pennsylvania Power Company ("Penn Power"), Nick Strimbu, Inc. ("Strimbu"), Blue Cross of Western Pennsylvania ("Blue Cross"), and the United Steel Workers of America ("USWA"). In addition, U.V. Industries Liquidating Trust and Mercer County, Pennsylvania were designated as non-voting members.

The instant dispute arises from a request for a separate committee of debenture holders made to the U.S. Trustee by letter dated January 13, 1989 (the "Debenture Group's January 13 Request") by Quantum, Schroder and Messrs. Walsh, Tyll and Shea. The U.S. Trustee, under date of January 27, 1989, issued a NOTICE OF APPOINTMENT OF INTERIM COMMITTEE OF DEBENTURE HOLDERS (the "Notice"). The Notice appointed the five signatories to the Debenture Group's January 13 Request as an INTERIM COMMIT-TEE OF DEBENTURE HOLDERS (the "Debenture Group"). On February 9, 1989, two members of the Debenture Group, Quantum's representative, Raymond H. Wechsler ("Wechsler"), and Walsh filed, on behalf of the Debenture Group, an application for an order authorizing employment of counsel (Schulte, Roth & Zabel of New York and Buchanan Ingersoll, P.C. of Pittsburgh) *nunc pro tunc* as of January 30, 1989.

The debentures are unsecured obligations of Sharon Steel Corporation.

Neuberger & Berman, represented by Stewart E. Tabin, is a substantial debenture holder and a member of the Official Committee; it opposed the formation of a new and separate committee and declined to serve thereon. The U.S. Trustee then, by letter of February 13, 1989, removed Tabin from the Official Committee over his objection.

Mellon Bank, which remained a party in interest, also opposed the formation of a second committee. The United Steelworkers of America and the remaining members of the Official Committee opposed the formation of a separate committee.

By notice of February 22, 1989, the U.S. Trustee purported to appoint a full permanent committee of debenture holders.

This court's order of February 10, 1989 fixed a hearing to determine the validity of the "Notice" issued by the U.S. Trustee dated January 27, 1989; the order also denied without prejudice, pending hearing, the application of the Debenture Group to retain separate counsel.

The hearing scheduled by the February 10, 1989 Order for March 3, 1989 was rescheduled to March 13, 1989.

Prior to the hearing, the Debenture Group filed affidavits and a pre-hearing brief. The Committee immediately filed responsive affidavits and a memorandum.

---

**1.** On January 13, 1988, after notice and hearings on motion of the Committee, the court had ordered the appointment of a trustee. James M. Toren was appointed. Following a unanimous recommendation by the Official Committee, he resigned in the fall of 1988, effective January 26, 1989, upon the appointment of Franklin E. Agnew as successor trustee.

**2.** IBJ Schroder Bank & Trust Company ("Schroder") succeeded Mellon Bank as indenture trustee.

Voluminous affidavits, statements and briefs were filed by both sides. While these had not been requested by the court, they were valuable as analyses of the law and as factual assertions of the activity of the Committee over a period of twenty months and interactions of the parties as members of the Committee. The affidavits were enlightening, both for what they said and what they did not say.

Counsel for the Debenture Group, at one point prior to the hearing, requested a delay for the purpose of engaging in discovery and was advised by the court that if it appeared that additional time was necessary, it could be considered. No further request was made.

No evidentiary hearing is necessary. For purposes of disposition of the within matter, the affidavits of the Debenture Group will be assumed to be true, whereas the affidavits and statements of the Official Committee will be considered as mere unproved allegations, thus eliminating any issue of fact. (However, only *facts* asserted by the Debenture Group are assumed to be true whereas conclusory statements are received only as argument.)

The U.S. Trustee's report indicates that he acted on telephonic communication from the Debenture Group and correspondence. The U.S. Trustee did not conduct a hearing. There is no indication that the U.S. Trustee examined the then existing record, conferred with opposing parties, or conferred with the case trustee.

For the reasons set forth below, we find:

I. Section 1102 of the Bankruptcy Code does not vest in the U.S. Trustee the power to negate orders of the Bankruptcy Court.

Page 772

II. The doctrine of separation of powers under the United States Constitution prohibits a construction of § 1102 which would authorize the U.S. Trustee to vacate or modify an order of the Bankruptcy Court.

Page 774

III. The appointment of a separate committee of debenture holders is not necessary to assure adequate representation where, as here, they share pari passu with other general unsecured creditors.

Page 776

IV. The principles of former adjudication operate as a bar to the January 13, 1989 Request to reconstitute the Committee of Unsecured Creditors, which had been resolved after notice and hearing, in the Order of May 5, 1987, in the absence of changed circumstances.

Page 783

V. The Administrative Procedures Act is inapplicable to the U.S. Trustee's action, and such action is subject to review *de novo* by the court.

Page 785

## Discussion

I. Section 1102 of the Bankruptcy Code does not vest in the U.S. Trustee the power to negate orders of the Bankruptcy Court.

■ Section 1102 of the Code was amended on October 27, 1986 by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, P.L. 99–554 (the "1986 Act"). The 1986 Act implemented the U.S. Trustee program on a nationwide basis and became effective in the Western District of Pennsylvania on August 21, 1987. The 1986 Act repealed former § 151102 of the Code formerly applicable in "pilot" U.S. Trustee districts, and transferred its provisions to section 1102(a)(1) and (2). The 1986 Act also amended section 1102(a) to enable a U.S. Trustee to appoint additional committees of creditors or equity security holders.

The legislative history of the 1986 Act indicates that section 1102 of the Bankruptcy Code in no way purports to vest the U.S. Trustee with the authority to review decisions of the bankruptcy court. To the contrary, the legislative history is clear that the bankruptcy courts are to conduct a plenary review of decisions of the U.S. Trustee affecting creditors' committees, upon motion of a party in interest, to ensure adequacy of representation.

Congress intended that the U.S. Trustee's role in connection with the appointment of creditors' committees was strictly "administrative," and that the power of the bankruptcy court to adjudicate disputes related thereto was in no way diminished.

[T]he Bankruptcy Reform Act of 1978 sought to separate the administrative duties in bankruptcy from the judicial tasks, leaving the bankruptcy judges free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination. To accomplish these goals, the Bankruptcy Reform Act of 1978 created the U.S. Trustee Pilot Program ...

\* \* \* \* \* \*

Section 218 amends 11 U.S.C. 1102 to transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the U.S. Trustee, as it is an administrative task. The court still retains the authority to order the appointment of such additional committees as are necessary, but the U.S. Trustee has the authority to actually appoint these committees once the court has ordered.

H.R.Rep. No. 764, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News 5230, 5241.

The plain meaning of the legislative history of the 1986 Act was followed in *In re McLean Ind.*, 70 B.R. 852 (Bankr.S.D.N.Y. 1987). In *McLean*, the court addressed the issue of whether a motion to the court to appoint a separate committee first must be preceded by a request to the U.S. Trustee. In concluding that a motion could be made directly to the bankruptcy court, the court relied upon the legislative history of the 1986 Act. The court stated that the amendments to section 1102 "merely ... place[d] *appointive* power in the hands of the U.S. Trustee as § 151102(b) had provided for in pilot districts." *Id.* at 856 (emphasis supplied). Thus, the dichotomy between the U.S. Trustee's ministerial function of designating members to sit on a committee whose existence was authorized by the court, and the court's authority to

adjudicate any and all disputes arising with respect to such committees, remained intact. *Id.* at 856–57. In concluding that the bankruptcy court retained the authority to review *de novo* determinations of the U.S. Trustee, the court stated:

Congress sought primarily to take bankruptcy judges out of the appointment process and Congress expressly retained in the bankruptcy courts the ability to decide *de novo* the question of whether additional committees are necessary to assure adequate representation.

*McLean,* 70 B.R. at 857–58.

Similarly, in *In re Texaco*, 79 B.R. 560 (Bankr.S.D.N.Y.1987), the court held that the role of the U.S. Trustee was merely administrative and that bankruptcy courts retained plenary authority to review the appointive decisions of the U.S. Trustee. In *Texaco*, the debtor moved before the bankruptcy court to disband one of two authorized official committees, after an unsuccessful request had been made to the U.S. Trustee. As an initial issue, the court had to determine whether and to what extent the 1986 Act had affected its authority vis-a-vis the U.S. Trustees in matters involving the creditors' committee.

The court noted that the 1986 Act expanded the U.S. Trustee program nationwide, which meant that in former non-pilot districts, the U.S. Trustee would now appoint the members of a committee. *Id.* at 565. The court also observed, however, that the legislative history was clear that the amendments did not limit the court's plenary power to adjudicate disputes in respect of creditors' committees. *Id.* at 566. In concluding that the bankruptcy court was empowered to conduct a *de novo* review, the court stated:

The issue of adequate representation is one which is ultimately entrusted to the court to decide upon an application made by a party in interest. This issue is determined on a *de novo* basis after the administrative task of appointing committees is performed by the United States Trustee.

*Texaco,* 79 B.R. at 566. The *Texaco* court dissolved one of the committees.

In *In re Public Service Co.*, 89 B.R. 1014 (Bankr.D.N.H.1988), the court held that pursuant to its inherent power, it could expand the membership of the existing committee notwithstanding the repeal of section 1102(c).[3] The court stated that:

Nothing in the present statute expressly prohibits the continued existence of the power to alter the structure of a committee following the initial appointment of the committee by the U.S. Trustee if and when an asserted justification requiring a judicial determination (rather than an administrative action by the U.S. Trustee) is brought before the court during the conduct of the proceeding.

*Public Service Co.*, 89 B.R. at 1021.

Thus, despite the argument that the 1986 Act had reduced the power of the bankruptcy court to affect creditors' committees, the court upheld the broad powers of the bankruptcy court to adjudicate disputes concerning the number and membership of creditors' committees.

In view of a statutory scheme that provides for bankruptcy court *de novo* review of actions of the U.S. Trustee, an interpretation of section 1102 that would confer authority on the office of the U.S. Trustee to nullify final orders of the bankruptcy court is implausible.

As discussed in Section II, below, § 1102 would be unconstitutional as violating the doctrine of separation of powers, if it is construed to authorize the U.S. Trustee to vacate a court order. The court should not reach the issue of the constitutionality of an Act of Congress if a construction of the statute is fairly possible by which the question may be avoided. Here, the plain words of the statute, the legislative history, judicial interpretation, and consideration of constitutional questions, mandate that § 1102 be interpreted to deny authority in the U.S. Trustee to vacate or modify an order of the bankruptcy court made after notice and hearing, as was attempted here.

II. The doctrine of separation of powers under the United States Constitution prohibits a construction of § 1102 which would authorize the U.S. Trustee to vacate or modify an order of the bankruptcy court.

If, as the U.S. Trustee asserts, section 1102 of the Bankruptcy Code vests the U.S. Trustee with the power to appoint a committee of debentureholders and effectively rescind the May 5th Order, then section 1102 is an unconstitutional violation of the principles of separation of powers. The U.S. Trustee's "Notice" would effectively overrule the bankruptcy court's May 5th Order providing for a reconstitution of the Official Committee. As an agency of the executive branch, the U.S. Trustee may not be empowered to overturn decisions of the bankruptcy court, made in the exercise of its judicial power.

It is a universally accepted tenet of our constitutional jurisprudence that decisions made by the judicial branch cannot be reviewed by either the legislative or the executive branches of government. This principle was established as far back as 1792 and has been reiterated by the Supreme Court on numerous occasions. *See, e.g., Hayburn's Case*, 2 U.S. (Dall.) 408, 1 L.Ed. 436 (1792) (circuit courts for districts of New York, Pennsylvania and North Carolina indicated that it was inconsistent with judicial power and hence, unconstitutional for their determinations with respect to pension claims to be subject to review by the Secretary of War); *United States v. Ferreira*, 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1851) (act authorizing state superior court judges to report decision arising from the treaty of 1819 with respect to adjustment of claims to the Secretary of Treasury for his determination regarding payment, did not vest the courts with judicial powers, but rather were awards of a commission); *Gordon v. United States*, 117 U.S. 697 (1865) (court refused to hear appeal of claim where it was authorized only to certify its opinion to the Secretary of the Treasury, since the court cannot express an

---

**3.** Section 1102(c) permitted the court to change the size or membership of a committee, upon motion, "if the membership of such committee

[was] not representative of the different kind of claims or interests to be represented."

opinion on a case where it cannot render judgment in the legal sense); *In re Sanborn*, 148 U.S. 222, 13 S.Ct. 577, 37 L.Ed. 429 (1893) (determination of Court of Claims in this instance was intended only to be advisory, and since no judicial role was involved, the determination could be reviewed by the Department of Interior).

The bankruptcy court constitutes a unit of the district court, 28 U.S.C. § 151, and functions as an adjunct to the district courts in bankruptcy matters. *See Republic Health Corp. v. Lifemark Hospitals*, 755 F.2d 1453, 1455 (11th Cir.1985); *In re Timbers of Inwood Forest Assoc.*, 808 F.2d 363, 374 (5th Cir.1987); *In re Bertoli*, 812 F.2d 136, 139 (3rd Cir.1987). As members of the judicial branch, bankruptcy courts are entitled to have the same respect accorded their decisions as other courts of the Federal Judiciary.

The U.S. Trustee's function in a bankruptcy case is intended to be purely administrative. H.R.Rep. No. 595, 95th Cong.2d Sess., *reprinted in* U.S.Code Cong. & Admin. News 6071. The legislative history of the 1986 Act confirms the separation of functions between the U.S. Trustee and a bankruptcy court and the U.S. Trustee's limited role with respect to the appointment and composition of creditors' committees vis-a-vis the bankruptcy court:

> Section 218 amends 11 U.S.C. 1102 to transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the U.S. Trustee, *as it is an administrative task.* The court still retains the authority to order the appointment of such additional committees as are necessary, but *the U.S. Trustee has the authority to actually appoint these committees once the Court has ordered.*

H.R.Rep. No. 764, 99th Cong.2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News 5241 (emphasis added).

The U.S. Trustee's reconstitution of the Official Committee in the face of the May 5th Order is beyond his authority as a member of the executive branch of the government. The Constitution prohibits the U.S. Trustee, as a member of the exec-

utive branch, from overruling a decision of the Bankruptcy Court, as a duly constituted entity of the judicial branch. The case of *United States v. O'Grady*, 89 U.S. (22 Wall.) 641, 22 L.Ed. 772 (1875) illustrates this fundamental constitutional principle. In *O'Grady*, the court of claims issued a judgment in favor of the plaintiff against the United States for the sum of $72,450. No appeal was taken from the court's decision. The Secretary of the Treasury deducted a portion of the judgment before certifying it for payment, and refused to remit any portion unless the plaintiff agreed to the deduction.

In striking down the Secretary of the Treasury's actions, the Supreme Court declared that:

> Such a power [*i.e.*, disobedience of the court's order] is not vested in the Secretary of the Treasury, nor in any other executive officer of the Government, ... and it is equally certain that the judgments of the Court of Claims where no appeal is taken to this court, are ... absolutely conclusive of the rights of the parties....
>
> \* \* \* \* \* \*
>
> Should it be suggested that the judgment in question was rendered in the Court of Claims, the answer to the suggestion is that the judgment of the Court of Claims, from which no appeal is taken, is just as conclusive under existing laws as the judgment of the Supreme Court....

*Id.* 89 U.S. (22 Wall) at 647–48; *see also United States v. Waters*, 133 U.S. 208, 10 S.Ct. 249, 33 L.Ed. 594 (1890) (attorney general cannot alter district attorney's fees which were determined by the district court acting in its judicial capacity, nor is the determination subject to reexamination and reversal by the attorney general, who is in the executive branch).

In this case, the U.S. Trustee's "Notice" would effectively review and modify the May 5th Order, which would violate the constitutional principle that "no administrative agency may usurp the adjudicatory function of the courts." *Robinson v. Vollert*, 411 F.Supp. 461, 475 (S.D.Tex.1976), *rev'd on other grounds*, 602 F.2d 87 (5th

Cir.1979); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 643, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950) (Federal Trade Commission cannot intrude upon or usurp the court's adjudicatory function); *Hayburn's Case*, 2 Dall. at 436 n. 2 ("Such revision and control [is] radically inconsistent with the independence of that judicial power which is vested in the courts; and, consequently, with that important principle which is so strictly observed by the Constitution of the United States," ... "[N]o decision of any court of the United States can, under any circumstances, ... agreeable to the Constitution, be liable to a revision, or even suspension, by the [legislative or the executive branch]."). Since no appeal was taken from the May 5th Order, that order is, to quote *United States v. O'Grady*, "just as conclusive under existing law as the judgment of the Supreme Court...." 89 U.S. (22 Wall.) at 648. Therefore, if section 1102 of the Bankruptcy Code grants the U.S. Trustee the authority to reconstitute the Official Committee subsequent to the bankruptcy court's reconstitution order, that grant of authority is not constitutional.

III. The appointment of a separate committee of debenture holders is not necessary to assure adequate representation where, as here, they share pari passu with other general unsecured creditors.

### A. Bankruptcy Court Exercises Plenary Review.

■ The Trustee's statutory source of authority for the appointment of such committee is section 1102 of the Bankruptcy Code, which provides:

(a)(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

11 U.S.C. § 1102.

Case law establishes that the decision of the U.S. Trustee with respect to the appointment of additional official committees, or, the reconstitution of an existing official committee, is subject to *de novo* review by the Bankruptcy Court in order to determine the adequacy of the representation. *In re McLean Ind.*, 70 B.R. 852, 856–59 (Bankr.S. D.N.Y.1987); *In re Texaco*, 79 B.R. 560, 566 (Bankr.S.D.N.Y.1987). *See In re Public Service Co.*, 89 B.R. 1014, 1021 & n. 9 (Bankr.D.N.H.1988); *In re Daig Corp.*, 17 B.R. 41, 43 (Bankr.D.Minn.1981); *In re First Republic Bank Corp.*, 95 B.R. 58 (Bankr.N.D.Tex.1988); *cf. In re Sousa*, 46 B.R. 343, 345 (Bankr.D.R.I.1985) (bankruptcy court has inherent power to review fees payable to standing trustee under United States Trustee program despite seemingly contrary language in 28 U.S.C. § 586(a)(2)).

### B. The Official Committee Provides "Adequate Representation" For All Unsecured Creditors and a Separate Committee is not "Necessary" at this time.

■ An additional committee or committees may be appointed only "if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2). The focus of the statute is the necessity for the additional committee and the adequacy of the representation of the existing committee. *See In re Public Service Co.* 89 B.R. 1014, 1019 (Bankr.D.N. H.1988); *In re Republic Bank Corp.*, 95 Bankr. 58 (Bankr.N.D.Tex.1988).

■ The Debenture Group has failed to assert facts which show any "necessity" for another official committee, or lack of "adequate representation" for the holders of Debentures in this case.

The thrust of the Debenture Group's January 13 Request is that the differing interests of the trade creditors and holders of debentures create a conflict that has prevented the Official Committee from

reaching agreement with respect to a plan of reorganization which can be confirmed in this case. The Debenture Group has not, however, as shown in their affidavits and arguments, both oral and written, made a single proposal to the Official Committee with respect to a plan of reorganization or the handling of an issue, which has been rejected by the Official Committee. The reasons given by the Official Committee for not filing a plan of reorganization in this case are (1) the denial of access to financial information by the prior reorganization trustee, (2) the prior reorganization trustee sabotaged lengthy negotiations between representatives of the United Steel Workers of America, the debtor, and the Official Committee, the conclusion of which is a prerequisite to finalizing the draft of the plan, (3) the management of the debtor has been unable to meet its production projections which were incorporated into the Official Committee's business plan, (4) the Official Committee's energies, and that of its professionals, were directed towards obtaining commercially reasonable post-petition financing, obtaining the cooperation of the former reorganization trustee, negotiating the terms of the resignation of the prior reorganization trustee and conducting protracted negotiations with the U.S. Trustee with respect to the necessary qualifications for, and the selection of, a successor reorganization trustee, (5) uncertainty as to the extent of liability for environmental problems (possibly $200,000,000) now in litigation, and (6) unresolved problems resulting from substantial pension plan underfunding (implicating the PBGC and IRS).

Attached to the affidavit of John D. Fry is a plan in draft form developed by the Committee. The Debenture Group's arguments do not attack the plan nor any portion thereof, and give no indication how the problems, which impede the finalization and filing of the plan, might be solved or circumvented. The court is unimpressed by the undefined concerns and conclusory arguments of the Debenture Group, devoid as they are of any attempt to address the details of the problems in the case.

The Debenture Group does not dispute the Committee's assertion that on 36 different issues at meetings of the Committee over a period of twenty months the vote was unanimous or virtually unanimous. The Debenture Group seeks to pass off that prolonged and persuasive period of accommodation by inferring that it simply was holding its tongue in exasperation. It doesn't ring true. The Debenture Group consists of sophisticated financiers, and they would have quickly articulated any objections they might have had to any action of the Committee, of which they were then members. They could have, but have not, articulated those objections here.

To the extent that there have been differences of view with respect to the issues relating to a plan of reorganization, such differences do not provide support for the appointment of a separate debentureholders' committee. It is universally recognized that intercreditor conflicts inhere in any committee:

> [Union] members may be interested in a plan of reorganization which preserves both their jobs and their collective bargaining agreement, while other creditors may be interested in a liquidation, or a reorganization involving a merger with a [third party]. *Such conflicts of interests are not unusual in reorganizations.* Materialman creditors, for example, may sometimes prefer to forego full payment for past sales in hopes of preserving a customer, while lenders may prefer liquidation and prompt payment. (emphasis supplied) [4]

*In re Altair Airlines, Inc.,* 727 F.2d 88, 90 (3rd Cir.1984); *accord In re Daig Corp.,* 17 B.R. 41, 43 (Bankr.D.Minn.1981); *In re Baldwin–United Corp.,* 45 B.R. 375, 376 (Bankr.S.D.Ohio 1983) (conflicts among creditors are inherent in all bankruptcy cases; in complex cases, they are inevitable). The legal principle to be distilled from these cases is clear: adequate repre-

---

**4.** We note that the court envisioned motivations exactly opposite those argued here by the Debenture Group.

sentation exists through a single committee as long as the diverse interests of the various creditor groups are represented on and have participated in that committee. The Debenture Group has not asserted facts tending to show that diverse interests have produced an inability of the Official Committee to function in the performance of its fiduciary obligations to all unsecured creditors. The Official Committee asserts that its actions in this case demonstrate the ability of the Official Committee to reach a consensus on all important issues which have arisen to date in the case, except the present attempt by the Debenture Group to act separately and engage its own attorneys. The Debenture Group disputes this conclusion, but asserts no facts showing that the Committee as a whole has not reached a consensus on all important issues before it.

In recognition of the Bankruptcy Code scheme that the reconciliation of differing interests of creditors within a single committee is the norm, and that the appointment of a separate committee is an extraordinary remedy, other courts have been reluctant to appoint additional committees. *See In re Public Service Co.*, 89 B.R. 1014, 1020 (Bankr.D.N.H.1988); *In re Texaco*, 79 B.R. 560, 565 (Bankr.S.D.N.Y.1987). These cases have also recognized that separate committees impose additional administrative expenses on the debtor's estate which adversely affect the debtor's ability to reorganize and that separate teams of professionals rarely contribute to the spirit of compromise that is intended as the guiding star of chapter 11.

The Debenture Group has not asserted any non-conclusory facts which, even if true, support its position that conflicting positions among the constituent members of the Official Committee have rendered inadequate the Official Committee's representation of the interests of all unsecured creditors. Thus, the decision of the U.S. Trustee dismembering the original Committee cannot stand.

Similar attempts elsewhere to divide creditors' committees, on the basis of real or imagined conflicts, have been uniformly unsuccessful.

In *In re Daig Corp.*, 17 B.R. 41 (Bankr. D.Minn.1981), the debtor moved to reconstitute the creditors' committee to remove the largest and predominant unsecured creditor in order to negotiate separately with that creditor. The bankruptcy court denied the motion. Although the court conceded that as a matter of strategy, the ability to deal with the largest creditor has merit, as a matter of fundamental bankruptcy law, the motion was inappropriate. The court observed that a statutorily appointed creditors' committee "is purposely intended to represent the necessarily differing interests and concerns of the creditors it represents." *Accord In re First Republic Bank Corp.*, 95 B.R. 58 (Bankr.N.D.Tex.1988) (creditor disagreement over strategy or objectives is not the type of conflict warranting appointment of separate creditors' committee); *In re Baldwin–United Corp.*, 45 B.R. 375, 376 (Bank.S.D.Ohio 1983) ("Conflicts among creditors are inherent in all bankruptcy cases.... [Y]et we decline to rule that a separate committee for each equity security interest will engender harmony and alleviate conflict among creditors ... [T]he opposite would result.")

*In re Walat Farms, Inc.*, 64 B.R. 65 (Bankr.E.D.Mich.1986) illustrates the tenet that a conflict resulting from a clash of the differing, parochial interests of constituent members will not warrant the appointment of additional committees. In *Walat Farms*, the bankruptcy court appointed an unsecured creditor to the unsecured creditors' committee. The debtor objected to the appointment to the committee of a creditor who was both a secured and unsecured creditor. The court agreed that the conflicts created by the appointment were several. The undersecured creditor's claim was larger than the aggregate total of claims of the other committee members. The undersecured creditor was a large, institutional lender, while the existing members of the committee were small trade creditors. Most importantly, the undersecured creditor's ultimate objective was potentially in diametric opposition to the unsecured creditors. As a partially se-

cured creditor, it might seek to foreclose on its collateral, which could seriously impair the ability of the debtor to reorganize successfully. Absent a successful reorganization, the unsecured creditors' prospects of receiving a distribution were dim. Nonetheless, the court concluded that representation would continue to be adequate under the statute:

> [T]he undersecured creditor may be a leading proponent of a plan that is not in the best interest of the class which the Committee is designed to protect. Again, there is a clear conflict of interest.
>
> *  *  *  *  *  *
>
> [T]he bank's unsecured claim is [not] so different as to make its presence on the committee inappropriate, nor do we have any reason to believe, at this time, that the bank's participation on the unsecured creditors' committee will detract from the committee's ability to conduct its statutorily prescribed functions.

*Walat,* 65 B.R. at 70.

These inherent conflicts, as a matter of law, did not rise to the level sufficient to appoint a separate committee.

The interests of the Debenture Group may in certain ways be distinct from those of other creditor groups represented on the Official Committee. However, each of these interests is represented by active, competent, financially sophisticated and strong-willed representatives and by counsel of their choice. Since it is the responsibility of all members to act as fiduciaries for all creditors represented by the Official Committee, *see Woods v. City Nat'l. Bank,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) and *In re Mesta Machine Co.,* 67 B.R. 151, 156 (Bankr.W.D.Pa.1986), this case will succeed or fail to the extent the members of the Official Committee can adjust their differences within the framework of the existing Official Committee. The formation of a separate committee will not eliminate the inherent tensions; indeed, it will only weaken the impetus to compromise.

Aside from the fact that there does not presently exist a conflict that prevents adequate representation, the cost and added delay that would attend the appointment of a separate committee must be avoided.

In *In re Public Service Co.,* 89 B.R. 1014 (Bankr.D.N.H.1988), the court denied the appointment of an additional committee for the sole reason of the delay and disruption that would be engendered by such an appointment. Similarly, in *Shaffer–Gordon Associates, Inc.,* 40 B.R. 956 (Bankr.E.D. Pa.1984), the court declined to appoint an additional committee because, *inter alia,* of the unnecessary cost to the estate. In *In re Baldwin–United Corp.,* 45 B.R. 375 (Bankr.S.D.Ohio 1983), the court declined to appoint certain additional committees, in part because of the cost that would attend such appointments. The court did not deny that the various interests may warrant a separate committee in the future to protect the various interests. However, the cost factor outweighed the need for adequate representation of the separate interests:

> Conflicts among creditors are inherent in all bankruptcy cases. In a case as complex as this one, they are inevitable. Yet, we do not believe, and decline to rule, that a separate committee for each equity security interest will engender harmony or alleviate conflict among creditors. We believe the opposite would result, and at an astronomical cost to the bankruptcy estates.

*Baldwin–United Corp.,* 45 B.R. at 376 *cf., In re Beker Ind.,* 55 B.R. 945, 949 (Bankr. S.D.N.Y.1985) (cost of appointing additional committee is factor to be considered).

The appointment of an additional committee at this point in the reorganization would not vindicate a prime function of a committee, to wit, assistance in the formulation of a plan of reorganization. *In re Saxon Ind.,* 39 B.R. 945, 947 (Bankr.S.D.N. Y.1984) (where all members of committee have been able to participate in plan formulation, no need for additional committees). The Debenture Group has not asserted any facts showing that throughout the reorganization process of this case, its members have not fully participated in plan negotiations. None of the facts asserted support a conclusion that they were denied the pow-

er to formulate a plan or to exercise a voice in its formulation. *See In re Johns-Manville Corp.*, 801 F.2d 60, 62 (2nd Cir.1986).

This is not a case where the claims of the creditors seeking a separate committee have been excluded from the Official Committee, are of a different class or have only a minority representation on a large statutory committee formed to represent all creditors. *Cf. In re Beker Ind.*, 55 B.R. 945 (Bankr.S.D.N.Y.1985) (unsecured creditors committee refused to admit debentureholders on ground that they held security). In this case, holders of debentures and trade creditors rank in *pari passu;* they are *all* general unsecured creditors. The absence of any significant amount of "senior indebtedness" in this case distinguishes *Sharon Steel* from cases where debentureholders have been permitted a separate official committee. The Debenture Group's motion boils down to an appeal to this court to give this one group separate legal representation and the opportunity to request the court to retain its own professionals at the expense of Sharon's estate. This is not an adequate basis for the U.S. Trustee's decision to appoint a separate committee made up solely of holders of unsecured debentures.

In addition, conflicts or disputes as to litigation, negotiation and administration in the reorganization proceedings, which were formally focused or resolved within the Official Committee, may in the future require court intervention and action. Such a course of action is contrary to the spirit of compromise and cooperation necessary in any reorganization and will inevitably cause further delay.

## C. The Debenture Group's Arguments.

The Debenture Group claims that debenture holders are owed in excess of $400,-000,000 (other records show $486,000,000 plus interest) and that as the largest general creditor group in this case, it is entitled to a separate committee. However, the seven proofs of claim filed by Cleveland Cliffs total over $450,000,000 and other trade creditors total approximately $40,-000,000. (Secured and priority claims may total an additional $400,000,000.) While it appears that the claim of Cleveland Cliffs will be challenged (the Debenture Group asserting that the claim is from zero to $20,000,000), the potential magnitude of the claim may not be ignored. Even if it is assumed that the debenture holders collectively hold the majority in amount of unsecured claims, it also was not disputed at argument that the trade creditors hold the majority in number of claims. Hence, under Bankruptcy Code § 1126(c), neither group could force confirmation of a plan of reorganization over the objection of the other.

Despite this court's pointed questions at argument, and careful review of the Debenture Group's affidavits, briefs and oral argument, there was no allegation of a single instance where a debenture holder had, in a Committee meeting or in a communication to the Committee, proffered a suggestion which was not accepted or amicably resolved; i.e., there was no instance alleged wherein the Committee blocked the effort of a debenture holder to undertake some act, or to have some act undertaken, which would advance this case toward confirmation of a plan of reorganization.

The affidavits of the Debenture Group are broad, sweeping and conclusory, but offer utterly no suggestion as to how the present division came about, nor what action the Debenture Group would undertake to benefit the parties in interest.

The conflict which was once resolved by the May 5th Order apparently erupted again when Quantum removed Samuel N. Seidman as its representative on the Official Committee and substituted Wechsler in his stead. Although not a legal or factual basis for our findings and determinations herein, it is apparent that a strong past working relationship exists between Wechsler and Schulte, Roth & Zabel. Inferences though they may be, the apparent "split" on the Committee including the Debenture Group's sudden displeasure with the lack of progress in the case appears to have been generated by Wechsler and/or his counsel for a self-serving purpose. The sole purpose appears to be to get his pro-

fessionals on the payroll of the debtor so as to be paid for every undertaking, necessary or unnecessary, without being subject to the increased level of scrutiny under § 503(b)(3) and (4) which requires a "substantial contribution in a case" before any compensation can be awarded.

■ The Debenture Group argues that the U.S. Trustee's appointment of a new debenture holders' committee did not constitute a modification or *vacatur* of this court's order of May 5, 1987. The argument defies logic. The order of May 5, 1987 resolved the then-existing dispute as to whether there should be a committee dominated by trade creditors, or a committee dominated by debenture holders, or two separate committees. At the May 1, 1987 hearing, a principal debenture holder in open court suggested the formation of a separate debenture holders' committee. The matter was resolved by the equally-balanced Committee appointed by the May 5, 1987 order, plus U.V. Industries and the County of Mercer as non-voting members and the United Steelworkers of America as a 13th member.

The U.S. Trustee's "Notice" of January 27, 1989 appointing a debenture holders' committee, appointed five members, all of whom were members of the debenture holders' segment of the Committee appointed in the May 5th Order. Those new appointees then resigned from the Official Committee, and the one debenture holder on the Official Committee who was not appointed to the new committee and who objected to the splitting of the Committee was involuntarily removed from the Official Committee by the U.S. Trustee.

Moreover, the resignations of the five were conditional resignations in that those resignations were effective only if the new separate debenture holders' committee was allowed to exist, and if not, they wanted to return to the Official Committee. At argument, counsel for the Debenture Group removed that condition, so as to render the resignations unconditional.

In the face of this, it is ludicrous for the Debenture Group's counsel to argue that "the U.S. Trustee did *not* reconstitute the Committee of unsecured creditors—he merely appointed an additional committee ... and the May 5th Order was *not* modified or vacated, as the indentured trustee and the debenture holders simply tendered their voluntary and conditional resignations from the committee of unsecured creditors."

■ Nor do we find persuasive the argument that the U.S. Trustee may act upon any reasons he "deems appropriate," and the standard of review of such actions is "abuse of discretion." Here, he resolved a dispute, without a hearing, without a record, and in the process vacated an order of court resolving the same dispute.

■ The Debenture Group also argues that six out of a committee of 13 does not provide adequate representation, that the Committee does not move toward confirmation, and that it does not properly and timely address the major issues. We think six members out of 13 provides adequate representation; no instance is mentioned where the six debenture holder members or any other minority disagreed with the seven other members on any issue. The Debenture Group's argument does not, as we think it must, include some substantial suggestion which it made and was not accepted; we must conclude that no such contribution was made and rejected. Nor does the Debenture Group identify the "major issues" which it says the Committee does not property and timely address; there is also no specific complaint by the Debenture Group as to how it would properly and timely address these unnamed "major issues." In the absence of such identification and specificity, the Debenture Group's argument is subject to severe criticism. It is charitable to characterize the argument as being unpersuasive.

The Debenture Group further argues that the trade creditors show less than good faith because they decline to extend further credit to the debtor. We know of no such obligation to be laid at the door of either the trade creditors or the debenture holders.

■ The Debenture Group also argues that the trade creditors who still deal with the debtor extract above-market prices for their wares. If that is true, if the trustee is currently paying prices above the market rate to trade creditors for their goods and services, then the trustee should be called to account and upon appropriate allegation of specific facts, a hearing should be held to determine whether he should be removed. Since the allegation cites not a single specific instance, the argument must be summarily dismissed.

The Debenture Group argues that it is more interested in consummation of a plan of reorganization than trade creditors. But logic would dictate the reverse; i.e., trade creditors who have money locked up in the debtor are involuntary investors; their money may be needed in their own businesses and their businesses may suffer for lack of capital. Debenture holders, on the other hand, invested money voluntarily in hopes of a profit by a return; presumably the money invested in Sharon's debentures was not immediately needed elsewhere, so that debenture holders may more comfortably await a methodical resolution of the debtor's difficulties than the trade creditors.

The Debenture Group has not shown, or asserted facts to show, that new counsel which it proposes to employ, new accountants, new engineers and new industry analysts, which will no doubt come next, will do anything differently than existing professionals in the case have done and are doing. Creation of an additional committee and its professionals as an additional party to all negotiations between the trustee, the debtor, the PBGC, the IRS, the EPA, the USWA and the Official Committee would delay, rather than accelerate, a successful plan of reorganization.

And finally, the Debenture Group argues that the Committee has been ineffective in achieving a confirmed plan of reorganization, that the case is moving at a "glacial like" pace, and that the Debenture Group is interested in a quick plan. It makes no comment on the adequacy or inadequacy of the draft plan prepared by the Committee

in August, 1987, and updated from time to time, attached to the John D. Fry affidavit, but not filed in court as a plan, presumably because of obstacles to confirmation.

The only justification the court can find for creation of a separate official committee is to benefit its proposed counsel, for whom the court has the greatest respect. Upon creation of the committee, it would be entitled to counsel, and counsel could legitimately consume large amounts of time in reviewing past actions by all parties, conferring with parties in the future, and cogitating on prospects, all of which would be paid by debtor's funds, whether or not such effort constituted a substantial contribution to the case. However, an additional official committee would be an impediment to progress in the case, and benefit to counsel cannot be sufficient cause for its creation.

■ It is noted that in the post-hearing reply memorandum filed by the Debenture Group, its counsel has made the threat that if the court does not recognize and authorize the Debenture Group as an official committee, then the Debenture Group will nevertheless act on its own as an unofficial committee and will impose upon the trustee, Franklin E. Agnew, separate meetings and consultations as though it were an official committee.

We view the threatened conduct of the Debenture Group as an attempt to impose a "leverage factor" upon our deliberations in this matter, and, if carried out, as an attempt to interfere with the reorganization proceedings more out of spite than as a constructive effort on behalf of the collective interests of all.

It would seem that the Debenture Group does its own interests and the estate a disservice by attempting to meet separately with the trustee, consume his time, and to extract from him the same explanations, the same information and the same analyses, which could be obtained by meeting as a part of the Official Committee. Only an official committee appointed under § 1102 has a *right* to consult with the trustee concerning the administration of the estate. 11 U.S.C. § 1103(c)(1). The Debenture

Group would have no right to consultation with the trustee, if it proceeds on its own as an unofficial committee, and its access to information may be severely limited, although the trustee may, at his discretion, and as his time may permit, accommodate debentureholders or other creditors in groups or individually.

### D. The U.S. Trustee's Argument.

The U.S. Trustee argues that his removal of Tabin, representing Neuberger & Berman, from the Official Committee was an administrative task. No mention is made of the fact that such removal was over the strenuous objection of Neuberger & Berman. And since Neuberger & Berman objected to the formation of a separate committee of unsecured creditors made up only of debenture holders, and declined to serve thereon, it was, by a separate order of the U.S. Trustee, removed from all participation. This was a dispute for resolution by the court as opposed to an administrative task.

### IV. Principles of Former Adjudication as a Bar

#### A. Former Adjudication Applies to the January 13 Request

The doctrine of former adjudication[5] provides that "a party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion." Wright, *The Law of Federal Courts*, 678 (4th ed. 1983) (quoting Hazard, *Res Nova in Res Judicata*, 44 S.Cal.L.Rev. 1036, 1043 (1971)). Former adjudication serves the policy of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and by preventing inconsistent decisions, encourag[ing] reliance on

5. Former adjudication is the nomenclature employed by the Restatement (Second) of Judgments. Former adjudication includes claim preclusion, traditionally referred to as *res judicata*, and issue preclusion, also known as collateral estoppel. The Third Circuit has cited the Restatement terminology with approval, *see Dyndul v. Dyndul*, 620 F.2d 409, 410 (3rd Cir. 1980); *Bower v. O'Hara*, 759 F.2d 1117 (3d Cir. 1985); *Gregory v. Chehi*, 843 F.2d 111, 115 (3d Cir.1988), and this appears to be the prevailing

final judgments." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). The action of the U.S. Trustee in appointing a separate committee pursuant to the Debenture Group's January 13 Request flouts that policy.

### B. Claim Preclusion Applies to Bar Appointment of Additional Committee

The doctrine of claim preclusion bars the Debenture Group from seeking the alternative remedy of a separate committee. Under the doctrine of claim preclusion, a party cannot relitigate issues that the party actually raised or could have raised in a prior action in which a final order was entered, including remedies that were, or could have been, sought. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

Principles of former adjudication apply in bankruptcy, *Donegal Steel Foundry Co. v. Accurate Products Co.*, 516 F.2d 583, 588 n. 12 (3d Cir.1975); *In re Giorgio*, 862 F.2d 933, 936 (1st Cir.1988) (citing *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946) and we are obligated to give the May 5th Order preclusive effect. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir.1987).

The elements of claim preclusion are (1) the identity of the party or parties in interest, (2) the identity of the cause of action, and (3) a final judgment on the merits. *United States v. Athlone Ind.*, 746 F.2d 977, 983 (3d Cir.1984); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir.1974); *In re Energy Cooperative Inc.*, 814 F.2d 1226, 1230 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987).

usage, *see Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870, n. 12 (5th Cir. 1984); *Kock v. City of Hutchinson*, 814 F.2d 1489, 1493 (10th Cir.1987) *reh'g granted in part,* 847 F.2d 1435 (10th Cir.1987) (en banc), *on reh'g,* 847 F.2d 1436 (10th Cir.1988) (en banc), *cert. denied,* — U.S. —, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1231 n. 5 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987).

We find in the instant case that there was an identity of the parties in interest, an identity of the claim or cause of action, and a final order on the merits.

■ The August 24, 1987 Order replacing Mellon with Schroder on the Official Committee created by the May 5th Order by necessary implication reaffirmed the May 5th Order without objection by any party. The August 24, 1987 Order therefore binds Schroder as well as the other parties.

### C. Issue Preclusion Applies to Bar Relitigation of Issue of Adequate Representation

■ The doctrine of issue preclusion estops a party or parties in interest from relitigating legal or factual issues that have been fully litigated in a prior proceeding, whether that prior action involved the same claim or not.

■ The elements of issue preclusion are that (1) the issue raised in the second proceeding is the same as the first, (2) the issue must actually have been litigated, (3) the issue was resolved by a valid and final judgment, and (4) the determination of the issue was essential to support the judgment entered in the first action. *In re Marketing Resources Int'l. Corp.*, 43 B.R. 71, 73 n. 4 (Bankr.E.D.Pa.1984); *In re Bohrer*, 19 B.R. 958, 959 (Bankr.E.D.Pa. 1982).

■ Here, the issue raised is the same as in the earlier litigation, the issue was actually litigated, the issue was resolved by a valid and final judgment, and the determination of the issue was essential to support the judgment entered in the first action.

### D. Bankruptcy Rule 9024 is not Available to the Debenture Group

Relief Under Bankruptcy Rule 9024

■ It is generally recognized that Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024, permits a bankruptcy court to vacate an order which is otherwise entitled to preclusive effect. However, the party moving for relief bears a heavy burden.

In the Third Circuit, relief under Federal Rule 60(b) is "an extraordinary remedy and may be granted only upon a showing of exceptional circumstances." *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 194 (3rd Cir.1988).

Given this formidable burden, movants under Federal Rule 60(b) have not fared well in the Third Circuit. *See, e.g., Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir.1978) (change in law not extraordinary); *Martinez–McBean v. Government of Virgin Islands*, 562 F.2d 908, 911 (3d Cir.1977) (legal error and inconsistency with respect to legal precedent not extraordinary); *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977) (change circumstances not extraordinary); *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir.1975) (allegation that jury did other than what it intended not extraordinary).

The only conceivable basis for relief under Bankruptcy Rule 9024 which the Debenture Group could prevail would be under subdivisions (5) or (6) of Rule 60(b). These two subdivisions are directed toward "changed circumstances." *Mayberry v. Maroney*, 529 F.2d 332 (3d Cir.1976); *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir.1978). In order to secure relief under either subdivision, the Debenture Group must demonstrate "changed circumstances" that would render the denial of said relief an "extreme and unexpected hardship." *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977); *accord In re Olsen*, 861 F.2d 188, 189 (8th Cir.1988) (if manifest injustice would result from changed circumstances not originally contemplated by any of the parties, relief is appropriate). The Debenture Group's assertions do not meet this standard. No hardship will follow the denial of such relief, and assuming *arguendo* it did, it would be neither "extreme" nor "unexpected."

The Debenture Group has not offered any facts that did not exist at the time they filed the Reconstitution Motion and so can-

not argue "changed circumstances" or "unexpected hardship."

The Debenture Group made a "conscious" decision to forego a separate committee and cannot relitigate that issue at this time.

Nor would denial create an "extreme hardship." The dissolution of the Debenture Group's separate committee would relegate them to the norm in respect of chapter 11 creditors' committee: the reconciliation of concededly diverse interests of creditors of the same priority within the framework of a single committee.

█ The May 5th Order was in the nature of a consent decree, which resulted from a proposal offered on behalf of the Debenture Group at the hearing. *See* Hearing Transcript at 67–68. An agreement was reached, and it was embodied in the May 5th Order. As a result, the Debenture Group will be held to a higher standard which the Third Circuit has indicated is applicable to consent judgments:

[W]here ... the defendants made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment their burden under Rule 60(b) is perhaps more formidable than had they litigated and lost.

*Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d, 1114, 1119–20 (3d Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980).

Here, the Debenture Group has not asserted any facts which would constitute an exceptional circumstance to overcome the formidable burden necessary for relief from the May 5th Order. Under this analysis, neither the formation of a separate committee nor the modification of the existing Committee can be sustained under Subdivisions (5) or (6) of Rule 60(b).

We are not prepared to say that Subdivisions (5) or (6) are inapplicable to any order such as the May 5th Order, because creditor committee conduct and responsibility in a reorganization case is ongoing, and developments might occur warranting a change. We find only that in this case the Debenture Group has not asserted facts warranting a remedy under Subdivisions (5) or (6).

The balancing of the interests of the trade creditors with the interests of the debentureholders was the primary focus of the hearing May 1, 1987, and the May 5th Order reconstituting the Committee to have six debentureholders, six trade creditors and the union as the 13th member, was and is the best result. Even if the matter were open to reconsideration because of changed circumstances, which we do not find present here, we would now reach the same result.

V. Applicability of the Administrative Procedures Act, and the Standard of Review.

█ The U.S. Trustee appointed a separate committee solely on the basis of telephonic communication with the Debenture Group and correspondence from it and the Committee, without consulting with counsel to the Official Committee or with those individual members of the Official Committee who opposed the appointment, and without consulting the trustee or the record. However, because neither § 1102 of the Bankruptcy Code nor the Administrative Procedures Act (the "APA") requires a hearing and because the decision of the U.S. Trustee is subject to *de novo* review, the APA is not applicable to the U.S. Trustee's decision.

The U.S. Trustee, as a unit of the Justice Department, is an agency within the meaning of the APA. *See* H.R.Rep. No. 764, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 5230.

However, by its terms, the APA does not apply to the U.S. Trustee's decision to appoint a separate committee. Section 554(a)(1) provides:

(a) This section applies, according to the provisions thereof, in every case or adjudication required by statute to be determined on the record after opportunity for an agency hearing, *except to the extent that* there is involved—

(1) a matter subject to a subsequent trial of the law and the facts *de novo* in court.

5 U.S.C. § 554(a) (Supp.1988) (emphasis added).

The APA requires an adjudicatory hearing only if the operative statute, here 11 U.S.C. § 1102, provides for an "adjudication ... to be determined on the record." *See* 5 U.S.C. § 554(a). Section 1102 is silent with respect to whether a hearing of any kind is required. *In re McLean Ind.*, 70 B.R. 852, 857 (Bankr.S.D.N.Y.1987) (section 1102 "nowhere provides for a hearing procedure for the resolution of this or any other issue where individual cases could be addressed"). The legislative history is similarly silent with respect to whether a hearing is required. Decisions under the APA have uniformly held that in the absence of express language in the statute providing for some type of fact-finding procedure and the absence of a legislative intent indicating that an adjudicatory hearing is required, the APA has no application to the agency determination. *E.g., Taylor v. District Engineer, U.S. Army Corps of Engineers*, 567 F.2d 1332, 1336 (5th Cir.1978) (because relevant section of Harbors and Rivers Act makes no mention of agency hearing, APA does not apply); *Robertson v. Fed. Trade Comm'n.*, 415 F.2d 49, 52 (4th Cir.1969) (absence of hearing provision in the Federal Trade Commission Act renders APA inapplicable); *cf., Horizons Int'l., Inc. v. Baldridge*, 624 F.Supp. 1560, 1574 (E.D.Pa.1986) (because statute was silent on its face, the court looked to legislative history to determine that Congress expressly provided for inapplicability of APA), *rev'd other grounds*, 811 F.2d 154 (3d Cir.1987). Thus, actions of the U.S. Trustee under section 1102(a) of the Bankruptcy Code are not subject to the APA.

■ Formal findings and adjudicatory procedures are not required of the U.S. Trustee. The statutory scheme of Bankruptcy Code § 1102 contemplates de novo review by the Bankruptcy Court. Conversely, *if* § 1102 required adjudication by the U.S. Trustee after opportunity for agency hearing, the APA would apply and the standard of review would be on an abuse of discretion basis.

In *In re Texaco*, 79 B.R. 560 (Bankr.S.D. N.Y.1987), the Bankruptcy Court, without express reference to the APA, recognized that the Bankruptcy Court's review of the U.S. Trustee's action is not governed by the abuse of discretion standard applicable to agency determinations:

> An abuse of discretion standard does not apply with respect to the United States Trustee's initial exercise of discretion because the concept of adequate representation is a legal issue which must be resolved judicially and ... here, *the Court's determination as to the adequacy of representation within the meaning of 11 U.S.C. § 1102(a)(2) is not an administrative review because this decision is committed to the Court on a de novo basis.*

*Texaco*, 79 B.R. at 566 (emphasis added).

Where the agency is not required to, and does not, provide an opportunity to be heard, and make findings and an order, review of such order on any standard other than *de novo* makes little sense. If there was no opportunity to be heard and no record, a reviewing court would having nothing upon which to conclude either that such order was an abuse of discretion or that it was not an abuse of discretion.

Nor would the court be permitted to remand to the U.S. Trustee for a hearing, because it was intended by Congress that the U.S. Trustee would fulfill only administrative functions and not adjudicatory functions.

Therefore, we hold that the provisions of the APA do not apply to the actions of the U.S. Trustee taken pursuant to § 1102 of the Bankruptcy Code and that court review of the U.S. Trustee's actions is *de novo*.

### Conclusion

In accordance with the foregoing, a separate order will be entered providing that:

1. The Order of May 5, 1987 issued by this court, reconstituting the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, remains intact and in full force and effect.

2. The NOTICE OF APPOINTMENT OF INTERIM COMMITTEE OF DEBEN-

TURE HOLDERS issued by the U.S. Trustee dated January 27, 1989 shall be, and hereby is, vacated.

3. The NOTICE of the U.S. Trustee dated February 13, 1989, removing Neuberger and Berman, or its representative, Stewart E. Tabin, from membership on the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, shall be, and hereby is, vacated.

4. The NOTICE OF APPOINTMENT OF COMMITTEE OF DEBENTURE HOLDERS issued by the U.S. Trustee dated February 22, 1989 shall be, and hereby is, vacated.

5. The application for employment of counsel by the INTERIM DEBENTURE HOLDERS COMMITTEE filed February 9, 1989 shall be, and hereby is, refused.

6. The U.S. Trustee is hereby directed to fill the vacancies on the OFFICIAL COMMITTEE OF UNSECURED CREDITORS and may wish to consider the effect of the conditional resignations of certain creditors, which conditions were later removed in open court. The U.S. Trustee shall, however, only appoint such creditors as are necessary to constitute the same number and balance of creditors as contained in the Order of May 5, 1987.